**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John Timothy MILLER,
Defendant–Appellant.**

**Nos. 89–2765 to 89–2769
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

May 30, 1990.

---

Roland E. Dahlin, II, Federal Public Defender, Marjorie A. Meyers, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Kathlyn G. Snyder, Paula C. Offenhauser, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before HIGGINBOTHAM, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

On May 9, 1988, John Timothy Miller was arrested after robbing a bank in Phoenix, Arizona. He subsequently not only pleaded guilty to robbing that bank but also confessed to having robbed seven other financial institutions. On August 2, 1988, Miller was sentenced to 46 months' imprisonment for the Arizona robbery. He later entered a plea of guilty to six of the other robberies, while the seventh count was dismissed.

At his sentencing for the six bank robberies, the district court placed the base offense level at 19 for each robbery. Under the grouping provision of Sentencing Guidelines § 3D1.4, the court increased the offense level by one for each robbery beyond the first, producing an offense level of 24. After a two-point reduction for acceptance of responsibility, the court reached a total offense level of 22. Miller does not challenge this result.

The district court also assessed three criminal history points under section 4A1.-1(a) for the prior sentence of imprisonment for the Arizona robbery. This gave Miller eleven criminal history points and thus placed Miller in criminal history category V. Consequently, the applicable sentencing range was 77 to 96 months. The court chose to depart from the guideline range and imposed a sentence of 105 months to be served consecutively to the previous 46–month sentence. Miller challenges (1) the assessment of the three criminal history points for the Arizona robbery, (2) the ordering of the new sentence to run consecutively to the prior sentence, and (3) the departure from the guidelines.

I.

First, Miller contends the district court erred in awarding three criminal history points for the sentence based upon the Arizona bank robbery. He maintains that that robbery was "intimately related" to the other six robberies to which he pleaded guilty and was part of a common scheme or plan (despite the fact that the nearest of the other robberies occurred in Colorado). Miller argues that as a consequence the district court should not have assessed any separate criminal history points for the Arizona robbery because that robbery, along with the other robberies, are all "related cases" under section 4A1.2(a)(2).

However, section 4A1.2 deals only with how the guidelines treat *prior* convictions. Under that section, prior convictions that are deemed "related" to one another are not counted separately. Section 4A1.2, however, does *not* permit the aggregation of prior convictions with those convictions for which the defendant is presently being sentenced. While section 3D1.4 does control how to aggregate the six crimes for which the court was sentencing Miller, the court properly awarded three criminal history points for the Arizona bank robbery under section 4A1.1(a). Because the other six bank robberies did not result in *prior* convictions, section 4A1.2 does not apply to the instant case.

II.

Miller next asserts that the court erred in imposing the sentence for the six

other bank robberies consecutively to, rather than concurrently with, the sentence for the Arizona robbery. When the court sentenced Miller, Guidelines § 5G1.3 read as follows:

> *Convictions on Counts Related to Unexpired Sentences*
>
> If at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences, *unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences.* In the latter case, such instant sentences and the unexpired sentences shall run concurrently, except to the extent otherwise required by law. [Emphasis added.]

*Commentary*

This section reflects the statutory presumption that sentences imposed at different times ordinarily run consecutively. *See* 18 U.S.C. § 3584(a). This presumption does not apply when the new counts arise out of the same transaction or occurrence as a prior conviction.

Departure would be warranted when independent prosecutions produce anomalous results that circumvent or defeat the intent of the guidelines.

**A.**

First, we determine that the language emphasized above does not apply to the instant case. We agree with the district court that none of the six bank robberies now before this court "arose out of the same transactions or occurrences as the unexpired sentence" imposed for the Phoenix bank robbery.[1] As the Phoenix robbery occurred neither on the same day nor in the same state as any of the other robberies, there was no proximity in time or space between the Phoenix robbery and the other robberies. Under the applicable version of section 5G1.3, in order to be aggre-

gated, the crimes must be part of the "same transaction or occurrence." While the guidelines themselves do not define that phrase in section 5G1.3 or its commentary, the Sentencing Commission interprets similar language elsewhere in the guidelines in a manner indicating that the Phoenix robbery would not be considered part of any transaction or occurrence that also involved the other bank robberies.

For example, Guidelines § 3D1.2(b) groups counts together for sentencing purposes "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan...." In interpreting that clause, example (7) of application note 3 to section 3D1.2 read, at the time of Miller's sentencing, "The defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days. The counts *are not* to be grouped together" (emphasis in original).

Since example (7) above presumes the same victim, it can only be interpreting the meaning of the phrase "two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." Applying a similar reading of "same transaction or occurrence" in section 5G1.3 to the instant case leads us to the conclusion that the Phoenix robbery, which occurred on a different day from any of the other robberies, was not part of the same transaction or occurrence.

In fact, in *United States v. Washington,* 898 F.2d 439 (5th Cir.1990), we considered, under the sentencing enhancement provisions of 18 U.S.C. § 924(e), the breadth of the phrase "single criminal transaction" and held that even two robberies of the same convenience store separated only by a few hours were different criminal transactions for sentencing purposes. Therefore, we easily find that the exception under section 5G1.3 for sentences arising out of the same transaction or occurrence does not apply to the instant case.

---

**1.** The trial court stated, "You have different victims here. You have different places, and I think that the [presentence investigation] report correctly groups these various offenses, and that they are separate offenses. And I will so consider them."

## B.

■ We now consider to what extent the district court believed that the law mandated consecutive sentences in the instant case. The presentence investigation report (PSI), paragraph 83, reads,

Guideline Provisions: Based on a total offense level of 22 and a criminal history category of V, the guideline imprisonment range is from 77–96 months. Pursuant to 5G1.3 this sentence will be consecutive to the unexpired sentence which the defendant is serving for the 5/9/88 bank robbery in the District of Arizona.

Finding inapplicable, as we have, the exception for offenses arising out of the same transactions or occurrences, the probation officer apparently concluded that section 5G1.3 mandated consecutive sentences. At the sentencing hearing, the court expressly adopted paragraphs 1 through 112 of the PSI, including "both the findings and the conclusions and the applicability of the guidelines." The only other statement from which we might divine whether the district court believed that section 5G1.3's directive that the sentences "shall run consecutively" left it without discretion to impose concurrent sentences is the one in which the court explains,

I might add that understanding that had the Government not agreed to a Rule 20 transfer, that this man would be facing mandatorily a sentence up to 120 years. Because all of them would have to be consecutive sentences, as I understand the law. It's just because the situation has arisen that we are here, and he is not subjected to that, and I don't say that he should be.

Therefore, it appears that the district court did not believe that it had any discretion to impose concurrent sentences and assumed that, as a matter of law, where sentences were imposed in separate proceedings, those sentences were required to be consecutive. The court made the second statement, like the first, in the context of an extended sentencing hearing at which everything was evaluated with reference to the guidelines. Thus, when the court observed, "[A]ll of them would have to be consecutive sentences, as I understand the law," we can assume the court's understanding to be that, under the guidelines, consecutive sentences were mandatory.

On the other hand, we find nothing to support an inference that the court believed the legal requirement was so absolute that no departure from the guideline rule was permitted. Indeed, the commentary to section 5G1.3 specifically authorizes departures for the purpose of imposing concurrent sentences in certain circumstances. Moreover, the court was obviously familiar with the general possibility of departure from the guidelines, as it did depart upward in the instant case. Finally, no other provision of the guidelines or federal statutes imposed such an inflexible requirement for consecutive sentences. Therefore, we assume that, while the court did not believe it had the authority to impose concurrent sentences within the guidelines, the court still recognized its power to impose concurrent sentences by departing from the guidelines.

## C.

■ We now turn to the question of whether section 5G1.3's apparent obligation on the court to impose consecutive sentences can be valid in light of the provisions of 18 U.S.C. § 3584(a), which reads,

Imposition of concurrent or consecutive terms.—If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively un-

less the court orders that the terms are to run concurrently.

At least four courts of appeals have addressed the possible conflict between section 3584(a), which gives the district court discretion as to whether to impose consecutive or concurrent sentences, and section 5G1.3, which seemingly does not permit such discretion. All appear to agree that the district court under the text of section 3584(a) must retain some discretion as to whether to impose consecutive or concurrent sentences. *See United States v. Nottingham,* 898 F.2d 390, 393–96 (3d Cir. 1990); *United States v. Rogers,* 897 F.2d 134 (4th Cir.1990); *United States v. Wills,* 881 F.2d 823, 826 (9th Cir.1989); *United States v. Fossett,* 881 F.2d 976, 980 (11th Cir.1989).[2]

**2.** In a recent case, *United States v. Schmude,* 901 F.2d 555 (7th Cir.1990), the court discussed § 3584(a) and § 5G1.3 together, but only in the context of the newly amended § 5G1.3, from which the potentially conflicting language (under which Miller was sentenced) has now been removed.

The Eighth Circuit in *United States v. Creed,* 897 F.2d 963, 965 (8th Cir.1990), noticed the possible existence of a conflict between §§ 3584(a) and 5G1.3 but chose not to address it, deciding that the argument proffered by appellant was waived on other grounds. While the Eighth Circuit addressed the provisions in conjunction in *United States v. Smitherman,* 889 F.2d 189, 191 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990), the issue of the instant case was not presented, because in *Smitherman* the court found that the district court had acted within its discretion in imposing consecutive sentences. Under the facts of that case, the court did not need to address whether the sentencing judge could have imposed concurrent sentences without departing from the guidelines. The court simply concluded that there certainly was not sufficient reason to require imposition of concurrent sentences. Hence, the Eighth Circuit does not indicate whether a court would have authority, without departing from the guidelines, to impose concurrent sentences.

**3.** Section 3584(b) reads as follows:
Factors to be considered in imposing concurrent or consecutive terms.—The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a).

**4.** Section 3553(a) reads as follows:

The courts diverge, though, when they reach the question of whether the grant of discretion made by section 3584(a) is sufficiently unambiguous and unconditional that any limitation upon that discretion imposed by section 5G1.3 is contrary to law. The Eleventh Circuit in *Fossett* allows discretion to be retained by the district court only through the mechanism of departure from the guidelines. 881 F.2d at 980 ("On the facts of this case, the district court could have ordered appellant to serve her sentences concurrently only if the court had followed the procedures for departing from the sentencing guidelines."). The court's argument is quite simply that, while section 3584(a) grants discretion to the courts, section 3584(b)[3] requires the court to consider the factors listed in section 3553(a),[4] which include the following:

Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced;

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date that the defendant is sentenced. Therefore, while section 3584(a) vests the district court with discretion as to whether to impose consecutive or concurrent sentences, that section also requires that the court "shall consider" the guidelines. Moreover, 28 U.S.C. § 994(a)(1)(D) states that the guidelines are for use of the sentencing court in making "a determination whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively."

The Fourth Circuit in *Rogers* explicitly followed the Eleventh Circuit's view, noting that several district courts have adopted the *Fossett* reasoning as well.[5] The court in *Rogers* observed, in further support for the *Fossett* conclusion, that the commentary to section 5G1.3 explicitly provided that "[d]eparture would be warranted when independent prosecutions produce anomalous results that circumvent or defeat the intent of the guidelines." The Fourth Circuit noted, moreover, that not only is departure specifically authorized by the commentary, but departure from the guidelines is generally available when relevant factors are deemed not to have been adequately considered by the Commission. The latter form of departure is authorized under 18 U.S.C. § 3553(c) and is subject to review for reasonableness. *See United States v. Mejia–Orosco*, 867 F.2d 216, 221 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989); 18 U.S.C. § 3742(e)(2).

The Third Circuit in *Nottingham* and the Ninth Circuit in *Wills* take the position contrary to that of the Fourth and Eleventh Circuits, noting that 28 U.S.C. § 994(b) provides that the guidelines must be consistent with all pertinent provisions of title 18. The Third Circuit further argues that section 3584(b)'s direction that the court shall consider the provisions of section 3553(a) does not limit in any way the discretion given in section 3584(a), because under section 3553(a) the court is to consider several factors in making its sentencing decision, and the guidelines and their commentary comprise only two of the seven factors listed.

Both courts reason that even though section 994(a)(1)(D) appears to empower the Commission to set forth guidelines that determine whether a sentence should be imposed concurrently or consecutively, section 5G1.3, which makes consecutive sentences mandatory in certain cases, is unauthorized, as it cannot be reconciled with section 3584(a), which demands that the district court have discretion over whether to impose concurrent or consecutive sentences. This analysis, however, fails to answer the contention of the Fourth and Eleventh Circuits, and of the government in the instant case, that section 5G1.3 provides the district court in some situations with guidance on how to exercise its statutory discretion and that even in these situations, the district court, subject to reasonableness, may still exercise that discretion by departing from the guidelines.

Both the Third and Ninth Circuits, though, looked beyond the text of section 5G1.3 in order to determine its meaning. The Ninth Circuit looked to its legislative history, while the Third Circuit examined the subsequent amendment to section 5G1.-3.

Effective November 1, 1989, section 5G1.3 was amended to read, "If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status), the sentence for the instant offense shall be imposed to run consecutively to the unexpired term of imprisonment." There-

---

**5.** *See United States v. Mendez*, 691 F.Supp. 656, 664 (S.D.N.Y.1988); *United States v. Amesquita–Padilla*, 691 F.Supp. 277, 289–90 (W.D.Wash. 1988) (both courts finding no inconsistency between §§ 3584(a) and 5G1.3). *Cf. United States v. Bell*, 716 F.Supp. 1207, 1214 (D.Minn.1989); *United States v. Scott*, C.R. No. JH–87–0570, 1988 WL 142126 (D.Md. May 23, 1988) (both courts departing from the guidelines to impose concurrent sentences).

fore, had the instant case been governed by the amended provision, there would be no mandate under section 5G1.3 for the terms to run consecutively. It is evident from the commentary to the amended section,[6] as well as from the amended text itself, that under the new version of section 5G1.-3, consecutive sentencing is mandatory only in the cases specifically listed; in other cases discretion is left to the district court as to whether to impose consecutive or concurrent sentences.

The Third Circuit relies upon this amendment in support of its result. Paragraph 289 of Appendix C to the guidelines states only, "The purpose of this amendment [to section 5G1.3] is to specify the circumstances in which a consecutive sentence is required by the guidelines." However, in the legislative history the Commission's rationale was stated more completely as follows: "Reason for Amendment: This amendment specifies circumstances in which a consecutive sentence is required by the guidelines. Erroneous language in the Commentary to this guideline concerning 18 U.S.C. 3584(a) is deleted." Amendment of Guideline § 5G1.3, 54 Fed.Reg. 21,383 (May 17, 1989). In fact, in the amended version of the commentary the court did excise the language of the previous commentary that read, "This section reflects the statutory presumption that sentences imposed at different times ordinarily run consecutively. *See* 18 U.S.C. § 3584(a)."

The Ninth Circuit properly points out in *Wills* that the guidelines incorrectly interpret section 3584(a)'s statement that "[m]ultiple terms of imprisonment imposed

at different times run consecutively unless the court orders that the terms are to run concurrently." Section 3584(a) does not create a presumption meant to favor consecutive sentences but merely a rule of construction in that, where one sentence is imposed subsequently to another, it is presumed they are consecutive if the court does not otherwise indicate. Similarly, where sentences are imposed at the same time, it is assumed they are concurrent unless the court indicates otherwise. *See Wills*, 881 F.2d at 827.

However, nothing suggests that the amendment merely clarifies some ambiguity in the former 5G1.3 or identifies some potential misreading of the quondam section 5G1.3. The old section 5G1.3 is unambiguous on its face and can be reconciled with section 3584(a) by assuming, as the Fourth and Eleventh Circuits did, that the discretion originally granted in section 3584(a) is bounded by section 5G1.3, with some discretion still remaining in the district court's power to depart from the guidelines.

Thus, while the Third Circuit has held, "Inasmuch as the amendment to the guideline is intended to clarify the existing guideline, we may give it substantial weight in determining the meaning of the existing guideline," *United States v. Ofchinick*, 877 F.2d 251, 257 n. 9 (3d Cir.1989), there is no indication that the amendment only *clarified* the existing guideline. It appears, rather, that because an error was noted in the way in which the guidelines had interpreted section 3584(a), the guidelines were changed, not merely restated.[7]

---

**6.** The new commentary reads as follows:

Under this guideline, the court shall impose a consecutive sentence where the instant offense (or any part thereof) was committed while the defendant was serving an unexpired term of imprisonment.

Where the defendant is serving an unexpired term of imprisonment, but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense may be imposed to run consecutively or concurrently with the unexpired term of imprisonment. The court may consider imposing a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have

been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time. Where the defendant is serving a term of imprisonment for a state offense, the information available may permit only a rough estimate of the total punishment that would have been imposed under the guidelines. It is not intended that the above methodology be applied in a manner that unduly complicates or prolongs the sentencing process.

**7.** Where the purpose of an amendment was solely to clarify a particular guideline, and not to change its legal effect, the Commission fre-

Therefore, it seems that had the purpose of the amendment been limited to clarifying the old section 5G1.3 and conforming it to the provisions of section 3584(a), such would have been stated. Accordingly, we cannot conclude merely from the amendment itself that section 5G1.3 is inconsistent with section 3584(a).[8] Hence, although we accept the Ninth Circuit's conclusion that the Commission did err in interpreting one aspect of section 3584(a),[9] we do not find that this leads inexorably to the conclusion that section 5G1.3's consecutive sentence requirement is incompatible with section 3584(a), nor do we find the amended version of section 5G1.3 to be a mere restatement of what was already contained in the first version. Hence, we choose to follow the position of the Fourth and Eleventh Circuits rather than that of the Third and Ninth Circuits and hold that, absent a departure from the guidelines, the facts of the instant case required consecutive sentences.

As we stated previously, we do not find that the hearing transcript indicates that the court was unaware of its power to impose concurrent sentences by departing from the guidelines.[10] Therefore, we affirm the imposition of consecutive sentences.

## III.

Miller further maintains that because the Commission amended section 5G1.3, his case should be remanded for resentencing to give the court an opportunity to consider the possible retroactivity of the amended guideline under 18 U.S.C. § 3582(c) and § 1B1.10. However, section 1B1.10(a) states that a change in the guidelines that results in the possibility of a lower sentencing range may be a ground for reconsideration of sentence under section 3582(c)(2) only in the case of a few particular amendments, namely those amendments listed in section 1B1.10(d); that list does not include the amendment to section 5G1.3. Moreover, under section 3582(c)(2), Miller must first file his motion for modification of his sentence with the district court. Therefore, on appeal we do not direct the modification of Miller's sentence pursuant to section 3582(c) or section 1B1.10.

## IV.

Finally, Miller claims that the district court, in departing from the guidelines

quently has stated as much in Appendix C. *See, e.g.,* paragraphs 23, 26, 27, 29, 44, 46, 53. In particular, paragraph 56 of Appendix C, which discusses the amendment to § 5J1.1, states, "The purpose of this amendment is to clarify the policy statement and conform it to the pertinent provisions of the Sentencing Act of 1987."

8. Indeed, amendments and changes of the guidelines were anticipated by its drafters and effect the statutory mission set forth in chapter 1 of the guidelines. "The Commission emphasizes, however, that it views the guideline-writing process as evolutionary. It expects, and the governing statute anticipates, that continuing research, experience, and analysis will result in modifications and revisions to the guidelines by submission of amendments to Congress." Guidelines, ch. 1, part A, Introduction 2.

9. The Ninth Circuit also argues that the legislative history suggests that §§ 994 and 3584 were meant to be complementary. Again, we do not view statutes as being at cross-purposes; § 3584 sets forth a general rule of discretion; and under § 994 the Commission may limit discretion in certain circumstances. This is consistent with the general purpose of the guidelines to provide more precise sentences within broad statutorily-authorized ranges. Furthermore, even if legislators were motivated by a much narrower purpose in promulgating § 994(a)(1)(D), that section's grant of authority to the Sentencing Commission to determine under what circumstances terms should be consecutive or concurrent is not constrained on its face to any particular circumstances. Where the text is unambiguous, we need not consult the legislative history. *See United States v. Albertini,* 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536 (1985).

10. We thus do not decide whether our rule from *United States v. Buenrostro,* 868 F.2d 135, 139 (5th Cir.1989), that "we will uphold a district court's refusal to depart from the guidelines unless the refusal was in violation of law," extends to the case where the district court mistakenly believed that departure was not permitted by law. *Cf. Fossett,* 881 F.2d at 979 (permitting an appeal on the ground that the district court erroneously believed it was not authorized to depart); *Rogers* (same); *but cf. United States v. Franz,* 886 F.2d 973, 976–81 (7th Cir.1989) (suggesting an appeal is available only in somewhat more restricted circumstances).

in imposing a 105–month sentence for the six robberies, based that departure upon impermissible factors. The court stated its rationale for departure as follows:

The Court: Under the guidelines, the offense level, this would be an offense level in the 22, which imposes a sentence of not less than—between 77 and 96 months. However, I find that there should be an upward departure in this case. This was a Category 5 determination insofar as criminal history is concerned, and I don't believe that truly reflects the magnitude of this man's involvement in these offenses and others, the offenses with which he's charged, and I think that an upward adjustment to Category 6 would be appropriate, which would then increase his maximum to 105 months confinement on these cases. And I'm going to—I'm also taking into account the fact that he was—that this matter was handled Rule 20 and that had these cases been prosecuted in other jurisdictions as they should have been, that his sentence—his exposure would be far greater; but I feel that under all the circumstances that 105 months confinement consecutive to the sentence he is presently serving out of the District of Arizona, I believe that's correct, is it not, Mr. Probation Officer?

The Probation Officer: That's correct, Your Honor.

The Court: Is an appropriate sentence. . . .

Shortly thereafter, the court provided further justification for its sentence, stating,

Mr. Miller, I think I owe you an additional explanation. The reason I'm assessing this punishment is that I'm just convinced that you can't control your drinking, and I think you're a menace, and it's just amazing to me that no injury has been done other than that was mentioned about your wife, which I did not take into account; but I just wouldn't feel comfortable with you out there walking around. So, your conduct leads me to no other conclusions, and that's why I'm assessing the punishment I'm assessing.

We find the court's stated reasons insufficient to justify the departure. The government argues that Miller admitted to committing certain crimes for which he was never prosecuted and that, under Guidelines § 4A1.3(e), "prior similar adult criminal conduct not resulting in a criminal conviction" is listed as a factor that could indicate that the defendant's criminal history score does not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit other crimes in the future. Indeed, had the court based its increase of the criminal history category from V to VI upon the fact that defendant admitted to committing certain crimes for which he was never prosecuted, the departure might well have been justified.

However, the court only stated, "I don't believe that truly reflects the magnitude of this man's involvement in these offenses and others, the offenses with which he's charged." Apparently "these offenses" refer to Miller's convictions that comprise the criminal history score that put him in criminal history category V, and "others" refer to the offenses for which Miller is being sentenced in the instant case. Thus, there is no reference to crimes Miller might have committed for which he was not prosecuted.

■ Second, the fact that Miller could have received a greater punishment had he been sentenced separately in each jurisdiction where he committed a crime cannot provide a basis for departure. Under § 3D1.4, the Commission has made its determination as to how to calculate the offense level when multiple offenses are being sentenced in a single proceeding. By promulgating sections 3D1.4 and 5G1.3, the Commission has chosen to make the expected total sentence for multiple offenses generally greater (because of the likelihood of consecutive sentences) where the sentencing is divided into separate proceedings; the Commission must have contemplated and intended this difference.

The mere fact that defendant's commission of crimes in separate jurisdictions exposed him to separate prosecutions (and

thus possibly a longer sentence) is not, in our view, a sufficient reason for a departure. The policy rationale of section 3D1.4 is no less applicable because some of the crimes were committed in different places; its aggregation formula should govern the result here. No permissible reason exists for a departure.

■ Finally, the district court erred in relying upon Miller's alcohol dependency as a basis for its sentencing decision. The government argues that the court's statement about Miller's drinking was merely an explanation of the court's sentencing rationale in laypersons' terms for Miller's benefit alone. The government notes that the court's statement about Miller's drinking is prefaced with the sentence, "Mr. Miller, I think I owe you an additional explanation." However, the next sentence begins with the words, "The reason I'm assessing this punishment...." Therefore, we cannot overlook the court's consideration of Miller's drinking problem when we examine the basis for the court's sentencing decision.

The government also argues that the statements about Miller's drinking were meant to provide a justification, not for the departure, but rather for the sentence as a whole and specifically for the imposition of the five-year term of supervised release with monitoring for alcoholism. There are two problems with this explanation. First, only the departure required justification, not the aspects of the sentencing that followed the guidelines such as the imposition of a five-year, rather than a three-year, term of supervised release. Second, the court's "additional explanation" of its reason for assessing "this punishment" immediately followed its discussion of the special assessment the court was imposing, not its discussion of the five-year period of supervised release with the alcohol treatment program. Therefore, it seems unreasonable that "this punishment" could refer specifically to the supervised release conditions.

In *United States v. MacNamara,* 901 F.2d 1112 (5th Cir.1990) (per curiam) (unpublished), we explained,

A court has the power to depart from the guideline range when it determines that 'an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' *U.S. v. Lopez,* 875 F.2d 1124, 1125 (5th Cir.1989). A court must state its reasons, however, for the departure, 'and the sentence imposed must be reasonable in light of the articulated rationale.' *U.S. v. Salazar–Villarreal,* 872 F.2d 121, 122 (5th Cir.1989). Of particular importance are holdings that drug dependence is not ordinarily relevant in determining whether departure is warranted. *E.g., Lopez,* 875 F.2d at 1127. *See also,* Sentencing Guidelines § 5H1.4.

In *Lopez,* the district court departed from the applicable guideline range because the defendant was 'a multi-convicted defendant who had just immediately been released from prison, *and a heroin addict besides.*' *Lopez,* at 1127 (emphasis in original). The *Lopez* court held that without an explanation of why the defendant's drug dependency was so extraordinary as to warrant an upward departure, the sentence had to be vacated as unreasonable.

Similarly, in the instant case the district court has not elucidated any extraordinary aspects of Miller's alcohol dependency that would justify a departure from the guidelines.[11]

Finally, the court's statement, "[I]t's just amazing to me that no injury has been done other than that there was mentioned about your wife, which I did not take into account," also cannot justify a departure from the guidelines. While it may indeed be amazing that no injury occurred in the course of committing so many bank robberies, the sentencing guidelines do consider the occurrence of injuries in the course of bank robberies and would have provided

11. We need not determine the *extent* to which the court relied upon Miller's alcoholism (an impermissible factor) in making its departure, as we find that *none* of the court's proffered reasons for departure is sufficient.

**352**

for an increased offense level had such injuries occurred. *See* Guidelines § 2B3.1(b)(3). Possibly, the injury to Miller's wife could have been an aggravating factor, but the court specifically said that it did not take that into account. Hence, this also cannot be a basis for departure.

Therefore, we VACATE Miller's sentence and REMAND to the district court for resentencing. The court may choose either to impose a sentence within the guideline range or to provide additional reasons justifying its departure from the guidelines.