**UNITED STATES of America, Appellee,**

v.

**Geraldo VEGA, Defendant–Appellant.**

**No. 227, Docket 91–1699.**

United States Court of Appeals, Second Circuit.

Argued April 19, 1993.

Decided Dec. 3, 1993.

Edward A. Rial, Asst. U.S. Atty., Brooklyn, NY (Mary Jo White, U.S. Atty., E.D.N.Y., Peter A. Norling, Emily Berger, Susan Corkery, Asst. U.S. Attys., on the brief), for appellee.

David DePetris, New York City (Stanley M. Meyer, DePetris & Meyer, on the brief), for defendant-appellant.

Before: KEARSE and ALTIMARI, Circuit Judges, and SWEET, District Judge *.

KEARSE, Circuit Judge:

Defendant Geraldo Vega appeals from a judgment entered in the United States District Court for the Eastern District of New York convicting him, following his plea of guilty before Arthur D. Spatt, *Judge,* on a one-count superseding information charging him with conspiracy to distribute and to possess with intent to distribute more than 100 grams of heroin and more than 500 grams of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B) (1988). Vega was sentenced principally to 360 months' imprisonment, to be served consecutively to a previously imposed New York State sentence, and to be followed by a five-year term of supervised release. On appeal, he contends principally that he should have been allowed to withdraw his plea of guilty and that the court erred in making his sentence consecutive. Finding no merit in his contentions, we affirm.

## I. BACKGROUND

In 1989, Vega and more than three dozen other individuals, including the defendants whose appeals were decided in *United States v. Concepcion,* 983 F.2d 369 (2d Cir.1992) (*"Concepcion "*), *cert. denied,* —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993), were indicted on a variety of charges arising out of their operation in Brooklyn, New York, of a wholesale and retail narcotics organization known as the "Unknown Organization" ("Organization"). According to evidence adduced at the *Concepcion* trial, the Organization at its peak had some 400 members and received gross income from heroin sales of more than $10 million a month. As described in *Concepcion,* the Organization maintained discipline and loyalty chiefly by means of violence and intimidation, and the record included evidence of "a substantial number of murders and mutilations." 983 F.2d at 375; *see also id.* at 375–76.

Codefendant Ricardo Melendez was the leader of the Organization at the time he was arrested in September 1988. Vega was Melendez's chief assistant, playing a major role in Organization activities. Vega was chiefly responsible for purchasing wholesale quantities of heroin and keeping records, and he smuggled weapons from Texas to New York in order to ensure that members of the Organization were well armed.

In 1985, Vega was arrested by New York City police at an apartment in which considerable quantities of currency and narcotics were found. Released on bail prior to trial, Vega absconded and was thereafter convicted *in absentia* in New York State court of multiple state narcotics offenses and sentenced

---

* Honorable Robert W. Sweet, of the United States District Court for the Southern District of New York, sitting by designation.

*in absentia* to a prison term of 25 years to life ("State sentence"). Vega nonetheless continued to work with the Organization until September 1988, when he was again arrested. In the federal indictment handed down in September 1989, Vega was charged with several counts of, *inter alia*, racketeering, narcotics, firearms, and money-laundering offenses.

In August 1990, one group of the federally indicted defendants, including Vega, proceeded to trial (the *Concepcion* trial) before Judge Spatt. At trial, Vega was represented by Anthony Suarez, notwithstanding a pretrial motion by the government for disqualification on the ground that Suarez had represented other members of the Organization and was himself the target of another inquiry. The court denied the government's disqualification motion after Vega consulted with independent counsel and informed the court that he nonetheless desired to have Suarez represent him. The court found that Vega understood the risks and that his choice to keep Suarez as his counsel was knowing and voluntary. On November 21, 1990, more than two-thirds of the way through the trial, Vega moved to change his plea of not guilty to a plea of guilty to the conspiracy count described above. Prior to accepting the plea, the district court advised Vega of the rights he would thereby give up and conducted a thorough interrogation of the provenance of the change of plea.

In response to the court's questions, Vega said he was satisfied with his attorney's performance. He stated that the government had made him no promises other than that it would file a superseding information charging him with the conspiracy described above and would agree to the dismissal of all other charges against him. He stated that he sought to enter the plea of guilty voluntarily and of his own free will and accord, that he was under no duress, and that no one had threatened or forced him to plead guilty. The court advised Vega, *inter alia*, that the statutory minimum prison term to which he could be sentenced was five years, that the maximum was 40 years, and that only the court could decide what his sentence would be. The court asked whether anyone had made any promise as to Vega's sentence and asked whether Vega had any questions for the court about his possible sentence. Vega said he had received no such promises and had no questions for the court.

Asked to describe his acts in connection with the conspiracy charged in the superseding information, Vega said that in 1985, 1986, 1987, and 1988 until his arrest, he had bought and sold drugs in Brooklyn as a participant in a conspiracy that involved the distribution of more than 100 grams of heroin and more than 500 grams of cocaine. The district court accepted Vega's plea of guilty after concluding that there was a factual basis for the plea, that Vega was "acting voluntarily," and "that he fully underst[ood] the charge, his rights and the consequences of his plea." (Hearing Transcript, November 21, 1990 ("1990 Hearing"), at 25.) The *Concepcion* trial ended a month later, with the jury finding all but one of the remaining defendants guilty of most of the charges against them.

On April 10, 1991, writing to the court *pro se*, Vega moved to withdraw his plea of guilty. He stated that, prior to his plea, his attorney had informed him that his federal sentence would run concurrently with his State sentence. Vega said he had just learned that the government would seek to have the sentence imposed consecutively and that he would not have pleaded guilty had he known the sentences would be consecutive. Vega also stated that he was not guilty of the conspiracy with which he had been charged. The court appointed new counsel, who made a formal motion to withdraw Vega's plea and added the contentions that Vega had been induced to plead guilty by (a) threats that the government would prosecute his wife, mother, and other relatives if he did not plead guilty, and (b) the recommendation of his trial counsel who was being paid by Melendez and whose advice was allegedly designed to assist Melendez and Suarez himself, rather than Vega.

On October 18, 1991, the court held an evidentiary hearing ("1991 Hearing") at which Vega testified, *inter alia*, that he had known prior to trial that Suarez was the target of another investigation, that he had

known since 1989 that Melendez was paying Suarez to represent Vega, and that Melendez owed him money for four months' work. Vega could not remember the amount; but he said that it was less than $1,000,000 and that he did not know whether it was more than $500,000. Vega also testified that he had had many conversations with the Assistant United States Attorney ("AUSA"), who had made him no threats or promises. Vega said that in his presence, the AUSA had advised Suarez that the government believed Vega's federal sentence would have to be consecutive to his State sentence.

In a statement on the record at the conclusion of the 1991 Hearing, and in a written Memorandum Decision and Order dated December 31, 1991, the court denied Vega's motion, concluding that Vega had failed to show any fair and just reason to withdraw the plea. The court noted Vega's pretrial insistence, after consultation with independent counsel, on having Suarez represent him, and it reaffirmed its earlier conclusion that Vega's insistence was a knowing and voluntary choice. It noted that Vega had not given any evidence, either concrete or speculative, that his plea of guilty had benefited Melendez or that Suarez had had Melendez's interests in mind when advising Vega to plead guilty. The court also reasoned that the interests of Melendez and Suarez were more likely to have been jeopardized than benefited by Vega's pleading guilty, since entering the plea created a danger that Vega would begin to cooperate with the government and provide evidence against them.

The court rejected Vega's claim that he had pleaded guilty because he believed he would receive concurrent sentences. It noted that at the 1990 hearing, it had made clear to Vega that no one but the court could set his sentence; that at that time, Vega had stated that no one had made him any promises as to his sentence; and that at the 1991 Hearing Vega admitted that, prior to his plea of guilty, the government had advised him that it believed consecutive sentences would be required.

The court also found that Vega had not substantiated his allegations that he had pleaded guilty in response to threats that without such a plea the government would prosecute members of his family. It noted, *inter alia,* that at the 1990 Hearing Vega had denied that he was acting under any threat, coercion, or duress.

Finally, the court found that permitting Vega to withdraw his plea would prejudice the government since it had already gone through two lengthy and complex trials of Organization defendants. If the government were forced to go through a third trial for Vega, who had pulled out of the first trial after 11 weeks, it would suffer substantial hardship. In addition, some of the government's witnesses might be unavailable for such a third trial because they had entered the federal witness protection program. The court also noted that by the time Vega entered his plea, overwhelming evidence of his guilt had been adduced at trial.

Having denied the motion to withdraw the plea, the court sentenced Vega on November 15, 1991, as indicated above, to a 360–month term of imprisonment to be served consecutively to the previously imposed New York sentence. Applying the 1987 version of the federal Sentencing Guidelines ("1987 Guidelines") in order to avoid an *ex post facto* problem, the court ruled, as discussed in Part II.B. below, that § 5G1.3 of the 1987 Guidelines provided for imposition of the present sentence concurrently with Vega's State sentence but that the court had discretion, both under 18 U.S.C. § 3584(a) (1988) and as a departure from the Guidelines, to impose the sentence consecutively. It determined that the sentences should be consecutive in light of the extent and nature of Vega's crimes.

The court rejected Vega's request for a two-step reduction in offense for acceptance of responsibility, stating that Vega had "den[ied] virtually everything" at the 1991 Hearing and "ducked his responsibility throughout this entire proceeding." (Sentencing Transcript, November 15, 1991 ("S.Tr."), at 24.)

This appeal followed.

## II. DISCUSSION

On appeal, Vega contends (1) that the district court should have allowed him to with-

draw his plea because of his misunderstanding as to consecutive sentencing and because of Suarez's conflicts of interest, (2) that making the present sentence consecutive to the State sentence was improper, and (3) that he was entitled to credit for acceptance of responsibility. None of his contentions has merit; only the first two warrant discussion.

A. *Plea Withdrawal*

█ A district court may permit withdrawal of a guilty plea prior to sentencing "upon a showing by the defendant of any fair and just reason." Fed.R.Crim.P. 32(d). A defendant who moves to withdraw his plea has the burden of satisfying the district court that there are valid grounds for withdrawal and that such grounds are not outweighed by any prejudice to the government. *See, e.g., United States v. Gonzalez,* 970 F.2d 1095, 1100 (2d Cir.1992); *United States v. Quinones,* 906 F.2d 924, 928 (2d Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 789, 112 L.Ed.2d 851 (1991). In reviewing a district court's denial of such a motion, we may overturn the court's findings of historical fact only if they are clearly erroneous, *see United States v. O'Hara,* 960 F.2d 11, 13 (2d Cir. 1992), and reverse its decision only if denial of the motion constituted an abuse of discretion, *see id.* at 14.

█ We see no abuse of discretion here. The court's conclusion that Vega failed to present any valid ground for withdrawal of the plea is amply supported by the record. The finding that Vega's election to have Suarez represent him notwithstanding Suarez's representing other Organization members and being a target of a separate investigation was knowing and voluntary is not clearly erroneous. Nor did the court err in concluding that Vega had failed to adduce any evidence that Suarez's eventual advice that he plead guilty was designed to, or had the effect of, benefiting either Melendez or Suarez, or that Vega might have been prejudiced by the fact that Melendez was paying for Suarez's representation of Vega. Indeed it is noteworthy that in his initial letter to the court seeking to withdraw his plea of guilty, Vega did not even mention Suarez's supposed conflicts of interest as a basis for his request.

█ Nor did the court err in concluding that Vega's desire to avoid consecutive sentences was not a valid ground for withdrawal of his plea, given, *inter alia,* his unqualified testimony in 1990 that no one had made him any promises as to his sentence and his 1991 admission that prior to his plea the government had expressly advised him of its view that sentences would have to be consecutive.

Given the absence of any valid ground for withdrawal of the plea, the court could properly have denied the motion without consideration of whether or not withdrawal would prejudice the government. The prejudice found by the court was an additional reason, on the basis of the present record, for denial of the motion.

B. *The Imposition of Consecutive Sentences*

█ The 1987 version of Guidelines § 5G1.3 provided as follows:

> If at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences, *unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences.* In the latter case, such instant sentences and the unexpired sentences shall run concurrently, except to the extent otherwise required by law.

1987 Guidelines § 5G1.3 (emphasis added). *Compare* 1987 version *with* § 5G1.3 as amended eff. November 1, 1989 ("If the instant offense was committed while the defendant was serving a term of imprisonment . . ., the sentence for the instant offense shall be imposed to run consecutively to the unexpired term of imprisonment."). The commentary to the 1987 version of § 5G1.3, citing 18 U.S.C. § 3584(a) (1984), noted that the Guidelines section reflected the "statutory presumption that sentences imposed at different times ordinarily run consecutively," 1987 Guidelines § 5G1.3 Commentary, but went on to state that "[t]his presumption does not apply when the new counts arise out of the same transaction or occurrence as a

prior conviction," *id.* The commentary concluded that "[d]eparture would be warranted when independent prosecutions produce anomalous results that circumvent or defeat the intent of the guidelines." *Id.* For several reasons we uphold the district court's imposition of the federal sentence consecutively to Vega's State sentence.

Preliminarily, we note that though the district court found that Vega's federal offense "arose out of the same transaction or occurrence as the state sentence" (S.Tr. 14), we are skeptical of this conclusion. We infer that the district court was referring to the Organization, the conspiracy itself, when it made this statement, and we have no doubt that despite the 1985 arrest the Organization was ongoing, *see, e.g., United States v. Arrington,* 867 F.2d 122, 130 (2d Cir.) (arrest of some coconspirators does not necessarily mean that the conspiracy has come to an end), *cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989), and Vega continued his participation, *see, e.g., United States v. Cruz,* 797 F.2d 90, 98 (2d Cir.1986) (arrest does not necessarily terminate arrestee's membership in the conspiracy). We doubt, however, that such a conspiracy itself is what the Guidelines meant by the terms "transaction[ ]" and "occurrence[ ]," for those terms, which are not defined in the Guidelines, usually connote discrete acts or events rather than an ongoing operation or course of conduct that encompasses many such acts or events. Vega's State sentence was based on events that occurred prior to his 1985 arrest, and the transactions that occurred prior to that arrest, though similar, were not the same transactions that occurred in 1986, 1987, and 1988. Thus, we do not endorse the district court's premise that 1987 Guidelines § 5G1.3 required, absent a discretionary decision to the contrary, that the sentence to be imposed on Vega be concurrent.

Assuming that that premise was correct, however, we find no error in the district court's exercise of discretion. The court took the view (a) that 1987 Guidelines § 5G1.3 did not deprive it of the discretion conferred by 18 U.S.C. §§ 3584 and 3553(a) to decide whether the sentence for the federal offense should be imposed concurrently with or consecutively to Vega's State sentence, and (b) that in any event the § 5G1.3 commentary gave it discretion to impose a consecutive sentence as a departure. Section 3584 provides, in part, that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively," and that in determining whether to sentence concurrently or consecutively, the court should consider the factors set forth in 18 U.S.C. § 3553(a). Those factors include the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . [and] to afford adequate deterrence to criminal conduct." *Id.* §§ 3553(a)(2)(A) and (B). The court concluded that a concurrent sentence would fail entirely to reflect these concerns for if Vega were sentenced concurrently, the result could be that he would serve a prison term totaling only five years for crimes that were "horrendous." It found that a concurrent sentence would "produce an anomalous result which could circumvent and defeat the intent of the guidelines." (S.Tr. 21.) It concluded therefore that the proper exercise of its discretion required consecutive sentencing. Vega argues that neither the statutory sections nor the departure provisions of the Guidelines gave the court the power to impose consecutive sentences on him. We disagree.

Other courts of appeals that have considered whether the 1987 version of § 5G1.3 deprived the sentencing court of discretion to choose between consecutive and concurrent sentences have unanimously concluded that the court retains the power to make such a choice. *See, e.g., United States v. Miller,* 903 F.2d 341, 345–49 (5th Cir.1990) (collecting cases). The courts have, however, divided with respect to rationale. Some have concluded that the Guidelines cannot override the discretion conferred by § 3854. *See, e.g., United States v. Nottingham,* 898 F.2d 390, 393–95 (3d Cir.1990) (holding that § 5G1.3 purports to but does not eliminate court's discretion with respect to consecutive versus concurrent sentences, and vacating consecutive sentence imposed by judge who believed he had no discretion to impose concurrent

sentence); *United States v. Wills,* 881 F.2d 823, 826 (9th Cir.1989) (upholding district court's "discretion to impose a concurrent or consecutive sentence, as a matter of law, under section 3584(a)"). Others have concluded that § 5G1.3 restricts the court to making its choice by means of a Guidelines departure. *See, e.g., United States v. Miller,* 903 F.2d at 348–49 (affirming judgment imposing consecutive sentence where district court indicated that it believed it had the power to, but declined to, impose concurrent sentence by way of departure); *United States v. Rogers,* 897 F.2d 134, 137–38 (4th Cir.1990) (vacating judgment imposing consecutive sentence where court believed it had no discretion, by means of departure, to make sentences concurrent); *United States v. Fossett,* 881 F.2d 976, 980 (11th Cir.1989) (affirming imposition of consecutive sentence where instant offense did not arise out of same transaction or occurrence, and stating that imposition of concurrent sentence could be imposed only by way of departure).

We need not choose between these two views in the present case, since Judge Spatt found the imposition of a consecutive sentence to be permissible and appropriate regardless of which principle applied. We think it clear that if the court did not retain discretion to impose a consecutive sentence on Vega as a matter of law, it surely had the power to do so as the departure envisioned by the commentary to § 5G1.3, for it would be anomalous indeed for the initial sentencing of a defendant to confer on him an effective immunity for the continuation thereafter of his criminal conduct.

## CONCLUSION

We have considered all of Vega's arguments on this appeal and have found them to be without merit. The judgment of conviction is affirmed.