104 F.3d 350
 78 A.F.T.R.2d 96-6449
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Joseph MACCHIA, Sr.; Lawrence Macchia; George Macchia;
Viktor Bautner; Michael Varzar; John Barberio;
Joseph L. Macchia, also known as Joseph
Macchia, also known as Joey, Defendants,
Marat Balagula, Defendant-Appellant.
 No. 96-1018.
 United States Court of Appeals, Second Circuit.
 Sept. 13, 1996.
 
 1
 John L. Pollok, Hoffman & Pollok, New York, NY.
 
 
 2
 Robert E. Lindsay, Attorney, Tax Division, Department of Justice, Washington, DC.
 
 
 3
 Present: McLAUGHLIN, JACOBS, Circuit Judges, KELLEHER,* District Judge.
 
 
 4
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued.
 
 
 5
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgment of the district court be and it hereby is AFFIRMED.
 
 
 6
 Marat Balagula was a primary player in various conspiracies to evade federal gasoline excise taxes. Balagula and others purchased or set up phony "middleman" companies to buy gasoline from one entity and sell it to another. Under the prevailing tax code--which assessed gasoline excise taxes against certain selling companies--the middleman company would become liable for an excise tax on the gasoline sold. Balagula and his cohorts would then cause the phony company to collapse, leaving the excise tax unpaid. Thus, the gasoline passed from the original seller to the eventual buyer without obligating either of those companies to pay the excise taxes.
 
 
 7
 The government charged Balagula (under the "Tarricone Indictment") with one count of conspiring to evade the federal gasoline excise tax, in violation of 18 U.S.C. §§ 371, 3623, and two counts of attempted excise tax evasion, in violation of 26 U.S.C. § 7201 and 18 U.S.C. §§ 2, 3623. This conspiracy existed from late 1985 to early 1986 in the greater New York metropolitan area (including New Jersey), and evaded over $400,000 in taxes. After a jury trial in the United States District Court for the Eastern District of New York (Wexler, J.), he was convicted on all three counts. The court sentenced Balagula to a total of ten years' imprisonment, which he is presently serving. We affirmed Balagula's conviction and sentence on appeal. See United States v. Tarricone, 996 F.2d 1414 (2d Cir.1993).
 
 
 8
 The government subsequently charged Balagula (under the "Macchia Indictment") with one count of conspiring to evade the federal gasoline excise tax, and four counts of attempted excise tax evasion. This broader conspiracy existed from early 1983 to the middle of 1988, also in the greater New York metropolitan area. Through this larger scheme, Balagula and others evaded more than $85,000,000 in taxes. Balagula moved to dismiss the charges, again in the Eastern District of New York (Wexler, J.), arguing that the conspiracy charged in the Macchia Indictment was, for the purposes of double jeopardy, the same conspiracy as charged in the Tarricone Indictment. The district court denied Balagula's motion, see United States v. Macchia, 845 F.Supp. 953 (E.D.N.Y.1994), and we affirmed, see United States v. Macchia, 35 F.3d 662 (2d Cir.1994).
 
 
 9
 Balagula then pled guilty to all five counts of the Macchia Indictment. The district court, using the 1987 version of the Sentencing Guidelines,[1] set Balagula's base offense level at eighteen. See U.S.S.G. §§ 2T1.1, 2T4.1. The court increased this by two levels for sophisticated means, see U.S.S.G. § 2T1.1(b)(2), two levels for conduct intended to encourage others to impede the Internal Revenue Service ("IRS"), see U.S.S.G. § 2T1.9(b)(2), and four levels for being an organizer or leader of the criminal activities, see U.S.S.G. § 3B1.1(a). The court reduced the offense level by two for acceptance of responsibility, see U.S.S.G. § 3E1.1, netting a total offense level of twenty-four.
 
 
 10
 Finding that Balagula's criminal history category ("CHC") of II did not adequately reflect the seriousness of his past criminal conduct or propensity for future crime, the district court departed upward to CHC IV. See U.S.S.G. § 4A1.3. The court then sentenced Balagula to a total of seventy-seven months' imprisonment, a $250,000 fine, and three years' supervised release. The court ordered this sentence to run consecutively to Balagula's unexpired ten-year sentence from his prior conviction. See U.S.S.G. § 5G1.3.
 
 
 11
 Balagula now appeals, arguing that the district court erred in: (1) ordering his sentence to run consecutive to, rather than concurrent with, his ongoing ten-year term; (2) departing upward in his CHC because of his past criminal conduct and potential for future crime; (3) enhancing his offense level for encouraging others to impede the IRS; and (4) imposing so severe a fine. Balagula also asks us to remand his case to a different judge for resentencing.
 
 
 12
 We review the district court's findings of fact only for clear error, and its application of the Guidelines to those facts for abuse of discretion. See United States v. Santiago, 906 F.2d 867, 871 (2d Cir.1990).
 
 
 13
 1. Consecutive Sentences. Balagula first argues that the district court erroneously ordered his sentence to run consecutive to, rather than concurrent with, his ongoing ten-year term (from his conviction on the Tarricone Indictment). We disagree.
 
 Section 5G1.3 provides:
 
 14
 If at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentence for the instant offense(s) shall run consecutively to such unexpired sentences, unless one or more of the instant offense(s) arose out of the same transactions or occurrences as the unexpired sentences. In the latter case, such instant sentences and the unexpired sentences shall run concurrently, except to the extent otherwise required by law.
 
 
 15
 U.S.S.G. § 5G1.3 (emphasis added). "The same transactions or occurrences" means the same "discrete acts or events," and not simply an "ongoing operation or course of conduct." United States v. Vega, 11 F.3d 309, 313-15 (2d Cir.1993).
 
 
 16
 Our holding that the conspiracies charged in the Tarricone and Macchia Indictments were not the "same conspiracies" for double jeopardy purposes is, of course, not necessarily determinative in a 5G1.3 inquiry. We found in that case, however, that the Tarricone and Macchia conspiracies were "quite different," Macchia, 35 F.3d at 670, involving different actors playing different roles; using different facilities and companies; and employing a different modus operandi. We also noted that the two conspiracies, as charged, contained no common overt acts. Id. at 671. Therefore, the district court did not err in concluding that the Tarricone and Macchia offenses did not arise out of the same transactions or occurrences--that is, the same discrete acts or events--and did not err in imposing consecutive sentences. See Vega, 11 F.3d at 315.
 
 
 17
 Balagula also argues that the Commentary to § 5G1.3, which provides that "departure would be warranted when independent prosecutions produce anomalous results that circumvent or defeat the intent of the guidelines," see U.S.S.G. § 5G1.3 comment., commands a downward departure in his case. But the Guidelines' language makes clear that departure is discretionary, see United States v. Rogers, 897 F.2d 134 (4th Cir.1990), and a district court's discretionary refusal to depart downward is not reviewable on appeal, see United States v. Chabot, 70 F.3d 259, 260 (2d Cir.1995) (per curiam).
 
 
 18
 2. Upward Departure. Balagula argues that the district court based its upward departure on improper grounds, did not give Balagula proper notice to contest the departure, and did not sufficiently articulate its reasons for departing. We reject all of these contentions.
 
 
 19
 The guidelines clearly provide for an upward departure when the district court believes that a defendant's CHC "significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G § 4A1.3. And, Balagula obviously had notice that such a departure was possible: he expressly argued against such departure both in his sentencing letter to the district court, and at the sentencing hearing.
 
 
 20
 Although the district court did not explain why a departure to CHC III (instead of IV) would be insufficient, see United States v. Deutsch, 987 F.2d 878, 886-88 (2d Cir.1993), "so long as the reasons supporting the departure are fully explained, a mechanistic step-by-step procedure is not required," United States v. Kassar, 47 F.3d 562, 566 (2d Cir.1995). The court's recitation of Balagula's criminal past, and apparent propensity to commit future crimes, was a sufficient articulation of the reasons supporting departure, and satisfies the requirement that the departure be explained. See id. at 566-67; United States v. Adler, 52 F.3d 20, 22 (2d Cir.1995) (per curiam).
 
 
 21
 3. Enhancement for Encouraging Others. Balagula next argues that the district court improperly increased his offense level by two for conduct intended to encourage others to impede the IRS. See U.S.S.G. § 2T1.9(b)(2). According to Balagula, this encouragement enhancement does not apply except to tax protest groups and promoters of fraudulent tax shelters. Balagula is wrong.
 
 
 22
 It is true that an application note to the 1994 version of § 2T1.9 lists tax protest groups and fraudulent tax shelters as examples of situations deserving application of the encouragement enhancement. But, as "examples," these listed schemes are clearly meant to be illustrative, not exclusive. See United States v. Rosario, 7 F.3d 319, 320-21 (2d Cir.1993) (per curiam). Here, the undisputed facts show that Balagula intended to encourage others to prepare false invoices such that Balagula and his co-conspirators could evade millions of dollars in gasoline excise taxes. Indeed, when asked at his plea hearing whether he had encouraged others to prepare false documents to facilitate his tax evasion, Balagula stated that he had. The district court did not clearly err in concluding that Balagula encouraged others to impede the IRS, nor abuse its discretion in imposing the two-level encouragement enhancement on these facts.
 
 
 23
 4. Fine. Finally, Balagula argues that the district court's imposition of a $250,000 fine constituted "a sua sponte upward departure" from the Guidelines. Again, Balagula is wrong.
 
 
 24
 The imposition of a $250,000 fine was not a departure from the Guidelines at all; rather, it was expressly provided for in U.S.S.G. § 5E4.2. That section provides for a maximum fine which is the greater of the maximum set forth in the fine table ($100,000), or twice the estimated loss caused by the defendant, or three times the estimated gain to the defendant. See U.S.S.G. 5E4.2(c)(2). Section 5E4.2(b) sets an absolute maximum fines for felonies at $250,000. See U.S.S.G. § 5E4.2(b). Balagula pled guilty to criminal activity resulting in an $85,000,000 loss to the IRS. Thus, the maximum fine could be as much as $170,000,000, but not more than $250,000. A $250,000 fine was therefore proper.
 
 
 25
 Because we affirm Balagula's sentence, we need not reach his request that this case be remanded to a different judge for resentencing. We have considered all of the additional arguments raised by Balagula, and find them to be without merit.
 
 
 26
 Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Robert J. Kelleher, of the United States District Court for the Central District of California, sitting by designation
 
 
 [1]
 Unless otherwise indicated, all citations to the Sentencing Guidelines are to the 1987 version under which Balagula was sentenced