**Collin MONTGOMERY,**
**Petitioner–Appellant,**

v.

**UNITED STATES of America,**
**Respondent–Appellee.**

**No. 914, Docket 87–2507.**

United States Court of Appeals,
Second Circuit.

On Submission May 3, 1988.

Decided July 28, 1988.

Collin Montgomery, pro se.

Douglas T. Burns, Asst. U.S. Atty. for the E.D. New York (Andrew J. Maloney, U.S. Atty. for the E.D. New York, John Gleeson, Asst. U.S. Atty., of counsel), for respondent-appellee.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Collin Montgomery, *pro se*, appeals from an order of the Eastern District of New York, which denied his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Montgomery alleges that the district court erred in denying his motion to withdraw his 1984 plea of guilty to conspiracy to distribute heroin (21 U.S.C. § 846) on the grounds that the plea lacked an adequate factual basis and that he was denied the effective assistance of counsel with respect to the plea. We agree with petitioner that his plea was accepted without an adequate factual basis in violation of Fed.R. Crim.P. 11(f), and reverse the order of the district court.

I.

In December 1983, Montgomery became the object of an undercover investigation by the Drug Enforcement Agency ("DEA"). A government informant, with whom Montgomery became acquainted while serving time in federal prison, introduced Montgomery to undercover DEA agents. After several meetings, Montgomery agreed to purchase a half-pound of heroin from the agents for $70,000, half of which was to be paid at the time of delivery. According to the affidavit of Arthur Scalzo, Special Agent with the DEA, Montgomery claimed to be purchasing the heroin for himself and two "accomplices."

On January 20, 1984, Montgomery met the undercover agents at the Howard Johnson Motor Lodge in Plainview, New York, to purchase the heroin. The agents gave Montgomery a small bag of flour which they represented to be heroin. After Montgomery accepted the bag, the agents identified themselves and arrested him.

At the time of his arrest, Montgomery had in his possession approximately $34,-900 in cash, keys from a rented Lincoln Continental, and a piece of paper with the name "Martin Ribbins" written on it. Martin Ribbins was arrested shortly thereafter

in the Howard Johnson's lobby. Ribbins and Montgomery were jointly indicted for conspiracy to distribute heroin in violation of 21 U.S.C. § 846.

On April 2, 1984, Montgomery, represented by appointed counsel, appeared in the district court to change his plea from not guilty to guilty. After apprising Montgomery of his rights, the court read aloud the indictment:

"On or about and between the 16th day of December, 1983 and the 20th day of January, 1984, ... the defendants Collin Montgomery a/k/a "Mr. Collin," and Martin Ribbins, a/k/a "Martin Richards" did intentionally combine, conspire, confederate and agree to violate Section 841(a)(1) of Title 21.

It was a part of that conspiracy that the defendants ... knowingly and intentionally would distribute and possess with intent to distribute a substantial quantity of heroin, a Section I narcotic drug controlled substance in violation of Title 21, U.S.C. § 846."

When asked if he understood the "nature of the charge," Montgomery appeared to be confused about the issue of possession in that he received flour, rather than heroin, from the DEA agents. During the ensuing discussion, the court became concerned that Montgomery did not "appreciate what he [was] pleading guilty to." Montgomery's attorney sought to reassure the court that Montgomery understood the charge. The judge again read the indictment and Montgomery again stated that he agreed with it.

However, when asked to describe his activity in his own words Montgomery stated, "I agreed to buy drugs and sell them for a profit." When asked specifically about the individuals with whom he had conspired, he named a DEA agent and the confidential informant; he denied knowing anything about Martin Ribbins, who was the named co-conspirator in the indictment, and did not name any other co-conspirator. The Assistant United States Attorney (AUSA) indicated that it was not the government's theory that he conspired with the government agents. Montgomery's attorney then stated:

[I]t is my understanding of the law ... that I believe there is case law on it that says that a conspiracy charged strictly with Government agents—and I believe there is even a drug case where the Government agents were both the suppliers and the buyers of the drugs is sufficient.

The court responded:

There is no question about that. I have no problem with that.

The judge then asked the AUSA what the government's position on the question was. In answer, the AUSA reiterated that it was not the government's position that Montgomery conspired with government agents.

After once again reading the indictment, the court carried on the following discussion with the defendant:

THE COURT: You understand that in order for there to be a conspiracy, there has to be more than one; do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Did you conspire, did you agree to commit this unlawful act with others?

THE DEFENDANT: Yes, yes, sir.

THE COURT: Is there any question about that in your mind?

THE DEFENDANT: I didn't know exactly who I was going to—should I say that?

THE COURT: Say it.

THE DEFENDANT: I was going to this bar in Chicago where I know you can turn this stuff and I didn't know exactly who was going to be there, but others, yes, sir.

Montgomery then described how he had obtained the purchase money from a loan shark, and after several moments of discussion, the court asked:

Now, tell us, in as broad a term as you know how, how you conspired with others?

I mean you just didn't have a vision, you had a conversation with someone?

Montgomery replied:

Not exactly.

I knew in my travels that there is a particular bar in the big cities up north where you can walk in, if you got the heart, and sell drugs and I am a pretty big fellow, I come out of prison and I was losing my family. I was losing everything.

I applied for jobs, my baby boy didn't even know me, my wife needed money and I took a shot, sir. I was going to go up there, put the drugs in my pocket and walk in the bar, stand in the corner. I was going to sell them and pay it off and I took my shot and the man was an agent, so I didn't do no good and here I am and I am guilty.

I would like to get this over with because I am a nervous wreck.

The court found this statement sufficient to support the conspiracy conviction, and accepted the plea. On April 25, 1984, Montgomery was sentenced to a ten year term of imprisonment which was later reduced to seven years pursuant to Fed.R. Crim.P. 35.

On March 29, 1985, Montgomery filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 which alleged that (1) his guilty plea was unlawfully induced; (2) the prosecution had failed to disclose certain evidence favorable to petitioner's defense; (3) the prosecution did not fulfill the plea agreement; and (4) he was denied effective assistance of counsel. The district court dismissed Montgomery's petition by memorandum and order dated September 25, 1985, and on appeal this court affirmed without prejudice to amend the petition to include claims raised for the first time on this appeal. *Montgomery v. United States*, 816 F.2d 669 (2d Cir.1987).

On June 10, 1987, Montgomery filed an amended petition which claimed that there was an insufficient factual basis for his guilty plea and that he was denied effective assistance of counsel with respect to that plea. By order dated October 19, 1987, the district court denied the petition.

## II.

Although at several points during the plea proceeding Montgomery stated that he conspired "with others" to distribute heroin, our review of the record leads us to conclude that there was not a sufficient factual basis for the plea to warrant its acceptance under Rule 11(f).

In order to be guilty of conspiracy to distribute heroin in violation of 21 U.S.C. § 846, the individual charged must have conspired with someone other than a government agent or an informant. *United States v. Barnes*, 604 F.2d 121, 161 (2d Cir.1979). As the district court pointed out, Montgomery stated a number of times that he had agreed with "others" to distribute the heroin; he also agreed with statements of the court that he conspired to do so. However, the only people with whom Montgomery admitted conspiring were a government agent and a government informant. The AUSA explained that it was not the government's theory that Montgomery conspired with government agents but, even when questioned by the court on this point, he never challenged Montgomery's statement as insufficient to establish the crime as a matter of law. Both Montgomery's attorney and the court indicated that conspiring with the agent and the informant satisfied the requirements of 21 U.S. C. § 846.

"We have accepted a reading of the indictment to the defendant coupled with his admission of the acts described in it as a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." *Godwin v. United States*, 687 F.2d 585, 590 (2d Cir.1982). This indictment specifically stated that Montgomery conspired with Ribbins. However, Montgomery flatly refused to admit that he conspired with Ribbins. He did admit that he conspired with "others unnamed," who apparently were only potential customers in Chicago, completely unknown to him at the time of arrest, and with the government agents. In short, the record does not show any admission by Montgomery that he had participated in an illegal conspiracy. Consequently, we con-

clude that there was an insufficient factual basis for the plea under Rule 11(f).

Reversed and remanded.