UNITED STATES of America, Appellee,

v.

CONTRACTOR, et al., Defendants,

**Robert Sebastian D'Souza,
Defendant–Appellant.**

Nos. 1341–1343, Dockets 89–1587,
90–1026, 90–1071.

United States Court of Appeals,
Second Circuit.

Submitted Nov. 6, 1990.

Decided Feb. 11, 1991.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. (Emily Berger and Beryl A. Howell, Asst. U.S. Attys., of counsel), for appellee.

Christine E. Yaris, New York City, for defendant-appellant.

Before OAKES and PRATT, Circuit Judges, LEVAL, District Judge, for the Southern District of New York, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

Robert Sebastian D'Souza appeals his conviction, following his guilty plea, of conspiring to import heroin into the United States, in violation of 21 U.S.C. § 963. After denying D'Souza's motion to withdraw his guilty plea, the district court sentenced him to 188 months imprisonment, five years of supervised release, a $10,000 fine and a $50 special assessment. D'Souza raises four issues on appeal. He argues that: (1) the district court erred in departing upwards from the sentencing guidelines because it did not properly notify him that it was considering such a departure and furthermore, that there was insufficient evidence for such a departure; (2) the district court incorrectly rejected his claim that he had never read his presentence report; (3) he received ineffective assistance of counsel because his trial counsel had a conflict of interest; and (4) the district court should have allowed him to withdraw his guilty plea. The government agrees with D'Souza to the extent of conceding that a limited remand is necessary to correct a procedural defect in the upward departure. We disagree, however, with both D'Souza and the government in their assessment of the sentencing proceeding; we conclude, as discussed below, that there was no procedural defect in the sentencing. We also reject D'Souza's other contentions on appeal. Nevertheless, we remand for resentencing because it appears that the district court, in departing up-wards, relied on a transaction for which D'Souza bore no responsibility.

## BACKGROUND

On April 1, 1988, Dr. Mohammed Iqbal Contractor, a practicing physician who worked in a medical clinic in Brooklyn, New York, agreed to sell 800 grams of heroin to a confidential informant and an undercover Drug Enforcement Agency ("DEA") agent. Contractor apparently had difficulty obtaining all 800 grams, and instead sold the informant and the DEA agent 636 grams of heroin. At the time, Contractor told his two buyers that he was going to be receiving additional heroin from his source in Pakistan. The DEA agent agreed to purchase two additional kilograms of heroin, and on April 13, 1988, he was told by Contractor that a sample of his latest shipment had arrived.

The DEA agent met with Contractor on April 20th and received a two-gram sample of heroin. Contractor later told the agent that his source in Pakistan, "Khawaja"—later identified as co-defendant Khawaja Mohammed Shafiq—could sell multi-kilogram quantities of heroin. When the agent indicated his interest, Contractor, on May 4, 1988, arranged for this sale by placing an international telephone call to Shafiq in Pakistan. The DEA agent was present during this phone call; at its conclusion Contractor told the agent that Shafiq had agreed to sell eight kilograms of heroin.

On May 11, 1988, when the DEA agent arrived at Contractor's home to discuss arrangements for the heroin delivery, appellant Robert Sebastian D'Souza was present. Contractor gave the DEA agent his business card, on the back of which he had written Shafiq's name. He instructed the DEA agent to have the informant, who was to pick up the heroin in Pakistan, present the card to Shafiq as a form of identification. At this meeting the DEA agent also agreed to purchase two kilograms of heroin from D'Souza.

The informant met Shafiq in Pakistan, and was told that the sale would be for two, rather than eight, kilograms of heroin.

On the next day, May 25th, Shafiq delivered 1,944 grams of heroin to the informant, with instructions that the DEA agent should meet Shafiq in London. On June 6, 1988, the DEA agent met with Shafiq and agreed to purchase five kilograms of heroin; the two men agreed to meet later in the day so that the agent could pay Shafiq. Shafiq was arrested later that day, as was Contractor in New York. D'Souza was arrested the following day in New York.

On June 14, 1989, Contractor pled guilty. Shafiq and D'Souza elected to go to trial. During jury selection, however, they reconsidered and decided to accept the government's plea offer. The government reminded the two defendants that the offer had expired. The district court nevertheless urged the government to accept the plea, and the government then agreed to allow Shafiq and D'Souza to plead guilty. After a proper allocution, the two defendants pled guilty.

Four months after pleading guilty, D'Souza, who by then was represented by his third attorney, moved to withdraw his guilty plea. In his supporting affidavit, he contended that he had pled guilty because of pressure from his second attorney and from Shafiq's attorney. He claimed that the two attorneys had "exerted a lot of pressure on me, telling me that my co-defendant would suffer if I did not accept [the plea]." The district court, without holding an evidentiary hearing, denied D'Souza's motion, and on December 18, 1989, sentenced D'Souza to 188 months imprisonment, five years of supervised release, a $10,000 fine and a $50 special assessment.

D'Souza, along with his co-defendants, appealed the judgment of the district court. *See United States v. Contractor*, 89–1587, 90–1026, 90–1027, 90–1071. On March 16, 1990, D'Souza's appointed counsel filed an *Anders* brief, while D'Souza pursued the appeal *pro se*. D'Souza also moved for a stay of the proceedings pending his efforts to retain appellate counsel. This motion was denied on June 26, 1990, but D'Souza was given additional time to amend his original *pro se* brief. On July 30, 1990, D'Souza retained appellate counsel, who moved this panel to: (1) relieve D'Souza's appointed counsel; (2) direct the withdrawal of the appointed counsel's *Anders* brief and D'Souza's *pro se* submissions; and (3) set a new briefing schedule for both parties. This motion was granted on August 17, 1990, new briefs were filed by both sides, and the appeal is now, finally, submitted for decision.

### DISCUSSION

#### 1. Sentencing Procedure.

■ D'Souza contends that his sentence, incorporating an upward departure from the guidelines range, was procedurally defective because the sentencing judge did not personally give advance notice of the contemplated upward departure. Relying on our opinions in *United States v. Cervantes*, 878 F.2d 50 (2d Cir.1989); *United States v. Palta*, 880 F.2d 636 (2d Cir.1989); *United States v. Kim*, 896 F.2d 678 (2d Cir.1990); and *United States v. Uccio*, 917 F.2d 80 (2d Cir.1990), the government agrees with the appellant and concedes that there must be a remand for resentencing.

Our opinions in the cases cited created a procedural rule that, before a sentence of upward departure, the defendant must receive notice of that possibility so that he can defend against it. In *United States v. Jagmohan*, 909 F.2d 61 (2d Cir.1990), we extended the rule to require notice to the government before a sentence departing downward. *Id.* at 63. Although it is true that some of our opinions in the cases cited do speak of the need for *the judge* to warn the defendant of the possibility, the meaning of those rulings was that the defendant must have received adequate notice. The obligation of the district court, prior to sentencing with upward departure, is to assure itself that the defendant has received notice and has thus had adequate opportunity to defend against that risk. We did not mean to insist that it must be the judge personally, who communicates the notice. So long as the defendant is adequately warned that he faces the possibility of an upward departure so that he

will not be unfairly surprised and will have adequate opportunity to argue against it, the concern is satisfied, regardless of whether the defendant receives notice from the judge or from another source.

In the cases cited by the government, the defendant did not have adequate notice and opportunity to contest the departure. It was the peculiar facts of those cases that gave rise to our observation that *the judge* should have warned the defendant. In *Cervantes*, for example, the judge had earlier specifically stated that he would "impose a sentence within the Guidelines." *Cervantes*, 878 F.2d at 52. The judge then departed upward without warning. This court found that the judge's comments might have lulled defense counsel not to address the issue of an upward departure. By not warning the defendant of the court's changed intentions, the judge thus, in effect, deprived defense counsel of the opportunity to present arguments against upward departure. *Id.* at 56.

*Uccio* presented a similar factual setting. The judge had earlier indicated that he would not rely on the defendant's kidnapping of a co-defendant as a basis for departure. The judge then imposed a sentence of upward departure apparently based in part on the kidnapping. This court found that, under those circumstances, the defendant did not have an adequate opportunity to challenge the departure. *Uccio*, 917 F.2d at 86–87.

In *Palta*, the presentence report had included a two-level increase for obstruction of justice based on the defendant's attempt to conceal his identity. The district judge decided that in addition to this increase, an upward departure was also warranted, apparently based on the same obstructive conduct. In remanding for resentencing, the court noted that the defendant had no notice that the judge intended to depart based on the same conduct that was already factored into the guidelines calculations. *Palta*, 880 F.2d at 640.

In *Kim*, this court found that the presentence report did not give the defendant proper notice of an upward departure. The report identified the possibility of a depar-

ture under section 4A1.3, while the district court appeared to have departed based on part 5K. *Kim*, 896 F.2d at 681. Because the judge departed on a legal ground different from that noticed in the presentence report, we spoke of the need for the court to warn the defendant of its intentions.

In this case, D'Souza had clear notice of the possibility of an upward departure, including the precise grounds, and ample opportunity to contest it. Part F of the presentence report, under the caption "FACTORS THAT MAY WARRANT DEPARTURE," expressly warned the defendant that "Per Application Note 9 of the Commentary to Guideline 2D1.1 [the court] may consider an upward departure in view of the unusually high purity (96 percent) of the heroin in this offense." The defendant had access to the report substantially prior to sentence and had full opportunity to challenge its findings and recommendations. The sentencing judge explicitly stated that his decision to depart upward was based on the precise ground suggested in the presentence report.

We therefore reject the joint suggestion of the defendant and the government for remand, as based on a pardonable misinterpretation of our rulings. Where a defendant had adequate notice that he faced the possibility of upward departure and could therefore defend himself against it, to remand for resentencing would serve no useful purpose. In creating the procedural rules for departures which we announced in the cited cases, we intended only to protect the defendants from surprise, not to impose burdensome and unnecessary formalities upon busy district judges.

■ Nonetheless, we conclude that a remand is necessary for a different reason. In departing based on the high degree of purity of the heroin, the judge seems to have relied on a transaction for which this defendant had no responsibility.

There were two pertinent transactions: One was a delivery by co-defendant Shafiq of 1,944 grams of 96% pure Pakistani heroin. The second was the conspiratorial undertaking of D'Souza to deliver 2 kilograms of heroin. The Government conceded at

the sentencing that D'Souza had no involvement in Shafiq's delivery. But the judge expressly referred to the "96 percent purity" of the heroin as the basis of the upward departure; so it seems clear he was relying on a delivery in which the defendant was not involved. Accordingly we must remand for resentencing.

The Government points out there was evidence that D'Souza's undertaking was to deliver heroin that would be "better" than the Pakistani heroin and that departure is accordingly appropriate. We express no view on this theory as it was not the basis of the sentence imposed.

### 2. *The Guilty Plea.*

D'Souza claims that the district court should have allowed him to withdraw his guilty plea because it was the result of "undue pressure." He further argues that the district court, by denying him the opportunity to present his "authorization" defense, indirectly coerced him into pleading guilty. Finally, he claims that his plea was legally insufficient. These arguments are meritless.

■ While D'Souza concedes that during the allocution he stated that he had not been forced to plead guilty, he argues that his plea was nevertheless tainted by "undue pressure". D'Souza was told by his attorney that his co-defendant Shafiq "would suffer" unless he pled guilty, and that this constituted undue pressure. We have recently held that pressure on a defendant "arising from the Government's insistence that a plea bargain would not be offered to his wife unless he pled guilty" was not a sufficient ground to withdraw a guilty plea under Rule 32(d), *United States v. Marquez*, 909 F.2d 738, 741 (2d Cir.1990); therefore, pressure based on a benefit bestowed on a mere friend is certainly not an adequate basis for withdrawal of the plea.

■ D'Souza claims that he repeatedly maintained his innocence, but that the government's court's refusal to allow his "authorization" defense forced him to plead guilty. While D'Souza did admit to agreeing to sell two kilograms of heroin to an undercover DEA agent, he maintains

that he had the authorization of the DEA to engage in such a transaction. However, by pleading guilty, D'Souza has waived any right to appeal the district court's decision that it intended to preclude any evidence of authorization. *United States v. Sykes*, 697 F.2d 87, 89 (2d Cir.1983).

■ Finally, D'Souza argues that the factual basis for his plea was insufficient. He claims that in his guilty plea he admitted that he conspired with the undercover agent and the confidential informant to import heroin, and that this admission was legally insufficient because such a conspiracy must involve someone other than a government agent or informant. Pointing to *Montgomery v. United States*, 853 F.2d 83 (2d Cir.1988), D'Souza claims that without an admission on this point, his plea was insufficient.

In *Montgomery*, the defendant, at his allocution, admitted that he had conspired with "others", but explicitly refused to acknowledge that he had conspired with the only co-conspirator named in the indictment. Instead, he based his plea on his conspiracy with a government agent. *Id.* at 84. When his attorney assured the district court that this was an adequate basis for the guilty plea, the district court accepted it. *Id.* We reversed, concluding that the guilty plea could not be premised on a conspiracy with the government agent. *Id.* at 85–86.

D'Souza claims that his situation is identical to the one in *Montgomery* because he, too, admitted to conspiring with government agents only. However, unlike the defendant in *Montgomery*, D'Souza did not object to the portion of the government's indictment that linked him with the co-conspirators. In addition, during his allocution he admitted that he had met the undercover agent in the house of another one of his co-conspirators. Furthermore, there is no evidence, as there was in *Montgomery*, that D'Souza's attorney or the district court misunderstood the law of conspiracy and believed that conspiracy with a government agent was a satisfactory basis for a guilty plea. Accordingly, when D'Souza

used the pronoun "they" to refer to his co-conspirators, it is fair to conclude that he was thinking of other co-conspirators named in the indictment, and not just government agents. After all, D'Souza claims that one of the reasons he pled guilty was because he felt undue pressure to help one of his co-conspirators. Given this pressure, it seems highly unlikely that when D'Souza pled guilty, he believed he was pleading to conspiring only with a government agent.

### 3. *Ineffective Assistance of Counsel.*

██ Prior to sentencing, D'Souza filed a complaint with the "bar association" against his attorney. At sentencing, the district court refused to relieve counsel. D'Souza claims that the district court should have disqualified his counsel since there was a conflict of interest and that this conflict denied him effective assistance of counsel. In order to establish ineffective assistance of counsel on the basis of a conflict of interest, D'Souza must prove that "his counsel actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). Furthermore, "[t]he defendant must identify an actual conflict of interest. Allegations of wrongdoing alone cannot rise to the level of an actual conflict unless the charges have some foundation." *United States v. Jones,* 900 F.2d 512, 519 (2d Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990). D'Souza has offered only general allegations that his lawyer was concerned with her reputation in light of D'Souza's complaint, and that this led her to be a far less zealous advocate because she needed to curry favor with the district court. He has offered no details about this conflict, and more importantly, no evidence concerning how this "conflict" adversely affected his lawyer's performance. For these reasons alone, the claim lacks merit.

### 4. *The Presentence Report.*

██ D'Souza claims that the district court erred in refusing to stop his sentencing proceedings when he informed the court that he had not had an opportunity to review his presentence report as required by Fed.R.Crim.P. 32. At the time that D'Souza made this claim, the district court halted the proceeding and questioned D'Souza's lawyer. D'Souza's lawyer stated that her associate had discussed the report with D'Souza on two occasions. D'Souza also claimed that he had never received the district court's memorandum and order denying D'Souza's motion to withdraw his guilty plea, but the court knew that this was false because the court itself had sent D'Souza a copy. This prevarication, combined with the assurance of D'Souza's counsel, entitled the district court to conclude that D'Souza was familiar with the report, thus satisfying rule 32.

## CONCLUSION

The judgment of conviction is affirmed. We vacate the sentence and remand for resentencing, however, because it appears that the district court, in departing upwards, relied on a transaction for which D'Souza bore no responsibility.