UNITED STATES of America, Appellee,

v.

Robert D. O'HARA, Defendant–Appellant.

No. 349, Docket 91–1280.

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1991.

Decided March 24, 1992.

Roger J. Schwarz, New York City, for defendant-appellant.

Scott W. McKay, Dept. of Justice, Washington, D.C. (Andrew J. Maloney, U.S. Atty. E.D.N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before: LUMBARD, NEWMAN and WINTER, Circuit Judges.

WINTER, Circuit Judge:

Appellant Robert O'Hara entered into a plea agreement with the government, waiving indictment and entering a plea of guilty before Judge Korman to a one-count information charging him with aiding and abetting acts of false recordkeeping by the Harris Corporation ("Harris") in violation of the Foreign Corrupt Practices Act of 1977, ("FCPA"), as amended, 15 U.S.C. § 78m(b)(2)(A) (1988), and 18 U.S.C. § 2 (1988). Had O'Hara not pleaded guilty in the Eastern District, he would have been indicted and put to trial with his alleged coconspirators in the Northern District of California. After a directed verdict of acquittal for the defendants in the California proceeding, but before his sentencing, O'Hara moved to withdraw his plea under Fed.R.Crim.P. 32(d). Judge Korman denied that motion. We hold that the California acquittal has no preclusive effect on the Eastern District charges against O'Hara. We also hold that it was not an abuse of discretion for Judge Korman to conclude that the acquittal of the alleged coconspirators was not a "fair and just reason" requiring that O'Hara be allowed to withdraw his plea. We therefore affirm.

## BACKGROUND

In 1989, O'Hara, doing business as Polo Associates Corporation, Inc., advised telecommunications companies, including Har-ris, about ways of obtaining business in Latin America. In January 1989, O'Hara and John D. Iacobucci, Vice–President and General Manager of Harris's subsidiary, Digital Telephone Systems ("Digital"), agreed that O'Hara would exploit certain contacts O'Hara claimed to have with officials of the government of Colombia to obtain telecommunications contracts for Harris and Digital. It is alleged that Iacobucci and O'Hara agreed that Digital would provide O'Hara with money to bribe the Colombian officials. In March 1989, O'Hara made plans to travel to Colombia in order to introduce certain Digital employees to the Colombian officials. On March 8, O'Hara sent an invoice to Iacobucci seeking payment of $5,500 in "Incidental fees due." On March 9, 1989, Digital responded by wiring O'Hara $9,500, $4,000 for O'Hara's expenses and $5,500 in "incidental fees." Harris and Digital carried the $9,500 on their books as a bona fide expense. O'Hara later prepared other invoices for "incidental fees" that were also paid by Harris and recorded as bona fide expenses.

After an FBI investigation in which O'Hara cooperated, the government filed a five-count indictment in the Northern District of California, charging Harris, Iacobucci and Ronald L. Schultz with violations of the FCPA. O'Hara was charged as an unindicted coconspirator. On August 24, 1990, O'Hara entered into a written plea agreement with the government in which he agreed to plead guilty in the Eastern District of New York to aiding and abetting a violation of the accounting provisions of the FCPA, 15 U.S.C. § 78m(b)(2)(A) (1988), and 18 U.S.C. § 2 (1988). The government thereafter filed a one-count information in the Eastern District charging O'Hara with that crime.

On December 27, 1990, O'Hara appeared *pro se* before Judge Korman to enter his guilty plea. Judge Korman made extensive efforts to ensure that O'Hara understood the charges against him and that his plea was knowingly entered. Judge Korman also urged O'Hara to consult with an attorney before actually entering his plea,

and O'Hara agreed to do so. On January 25, 1991, O'Hara appeared again before Judge Korman, this time represented by counsel. The government advised O'Hara's attorney that if O'Hara declined to plead guilty, he would be indicted in the Northern District of California and tried with Harris, Iacobucci, and Schultz. Although O'Hara's attorney counseled O'Hara against pleading guilty, O'Hara insisted on entering the plea.

In March 1991, O'Hara appeared as a witness for the government in the trial in the Northern District of California. After completion of the government's main case, Judge Charles A. Legge directed a verdict of acquittal on all counts for all defendants. Concluding that the government had failed to establish an agreement between the defendants and O'Hara to bribe Colombian officials, Judge Legge held that the government had consequently failed to establish the specific intent necessary to support a finding that the defendants made false records regarding the payments to O'Hara.

On March 29, 1991, O'Hara moved to withdraw his guilty plea. Judge Korman denied the motion and sentenced him to two years probation. O'Hara appealed.

## DISCUSSION

O'Hara makes two claims: (i) his guilty plea lacked a sufficient factual basis; and (ii) Judge Legge's ruling in the Northern District of California had a preclusive effect on the proceedings against him in the Eastern District and was a "fair and just reason" for withdrawing the plea.

### 1. *Basis for the Guilty Plea*

▮ O'Hara's claim that there was an insufficient factual basis for his guilty plea is meritless. " '[A] reading of the indictment to the defendant coupled with his admission of the acts described in it [is] a sufficient factual basis for a guilty plea, as long as the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal.' " *Montgomery v. United States*, 853 F.2d 83, 85 (2d Cir.1988) (quoting *Godwin v. United States*, 687

F.2d 585, 590 (2d Cir.1982)). The information was "detailed and specific," *Montgomery*, 853 F.2d at 85, and included allegations that Harris provided money to O'Hara to bribe Colombian officials and falsely recorded the payments on its books. Judge Korman went to great lengths to ensure that O'Hara understood the charges against him, and the record clearly shows that O'Hara admitted the allegations contained in the information. Because O'Hara neither "denie[d] an element of the offense [nor] generally maintain[ed] his innocence," *Godwin*, 687 F.2d at 590, O'Hara's admission of the allegations sufficed to establish the requisite factual basis for his guilty plea.

### 2. *Effect of the Coconspirators' Directed Verdict*

Fed.R.Crim.P. 32(d) states that "[i]f a motion for a withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason."

▮ We first clarify the standard of review applicable to denials of motions to withdraw guilty pleas, a matter on which our prior opinions have not been uniform. *Compare United States v. Marquez*, 909 F.2d 738, 740 (2d Cir.1990) (applying "clearly erroneous" standard), *cert. denied*, ─── U.S. ───, 111 S.Ct. 957, 112 L.Ed.2d 1045 (1991); *United States v. Michaelson*, 552 F.2d 472, 475 (2d Cir.1977) (same); and *United States v. Podell*, 519 F.2d 144, 148 (2d Cir.) (same), *cert. denied*, 423 U.S. 926, 96 S.Ct. 270, 46 L.Ed.2d 252 (1975), with *United States v. Needles*, 472 F.2d 652, 656 (2d Cir.1973) (applying "abuse of discretion" standard); *United States v. Hughes*, 325 F.2d 789, 792 (2d Cir.) (same), *cert. denied*, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 178 (1964); *United States v. Smiley*, 322 F.2d 248 (2d Cir.1963) (per curiam) (same); *United States v. Lester*, 247 F.2d 496, 500 (2d Cir.1957) (same); *see also United States v. Lombardozzi*, 436 F.2d 878 (2d Cir.1971) (applying both standards), *cert. denied*, 402 U.S. 908, 91 S.Ct. 1379, 28 L.Ed.2d 648 (1971). Adjudicative facts are, of course, subject to the clearly-erroneous standard of review. Whether the facts so

found constitute a "fair and just reason" for the withdrawal of a plea and whether the district judge properly denied the motion to withdraw the plea are mixed questions of law and fact, reviewed by us only for abuse of discretion. *Needles*, 472 F.2d at 655–56; *Smiley*, 322 F.2d at 249.

O'Hara argues that Judge Korman should have given preclusive effect to Judge Legge's decision granting a directed verdict in the California proceedings, thereby enabling him to withdraw his guilty plea in the Eastern District of New York. In so arguing, O'Hara must confront *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), which held that an acquittal by jury verdict does not have a preclusive effect on a later prosecution of a coconspirator or accomplice. O'Hara argues that *Standefer* limits only the preclusive effects of jury verdicts and not those of directed verdicts, which amount to a judgment that the evidence is insufficient as a matter of law. We disagree.

*Standefer* held that an aider and abettor may be convicted even after the principal had been acquitted. We perceive no distinction for purposes of preclusion between a ruling by a trier of fact that the government's evidence is unpersuasive and a directed verdict on grounds of insufficiency. *Standefer* emphasized the procedural differences between civil and criminal cases, in particular the government's inability to appeal. The government thus did not have the necessary " 'full and fair' opportunity to litigate" the contested issue of the sufficiency of the evidence in the California proceeding, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332, 99 S.Ct. 645, 652, 58 L.Ed.2d 552 (1979), because it could not appeal from Judge Legge's grant of a directed verdict.

However, there remains the rather different question of whether the directed verdict in the California proceeding constitutes a "fair and just reason" for O'Hara's withdrawal of his plea under Rule 32(d). As to this question, O'Hara bore the "burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government." *United States v. Michaelson*, 552 F.2d 472, 475 (2d Cir.1977).

It was not an abuse of discretion to hold that the acquittal of O'Hara's alleged coconspirators was not such a "fair and just reason" for the withdrawal of his plea, in view of the prejudice to the government of having to conduct a second trial if the plea were withdrawn. We have held that "a change of heart prompted by a reevaluation of the government's case against [a defendant] ... [does] not constitute sufficient justification to overturn the district court's broad discretion in this area." *United States v. Figueroa*, 757 F.2d 466, 475 (2d Cir.), *cert. denied*, 474 U.S. 840, 106 S.Ct. 122, 88 L.Ed.2d 100 (1985). This is such a change-of-heart case. Having the benefit of hindsight after the acquittal in California, O'Hara not only has reassessed the strength of the government's original case against him but may also have reassessed the likelihood of further proceedings should he be allowed to withdraw his plea.

To hold that Judge Korman's decision was an abuse of discretion would allow defendants such as O'Hara to have it both ways. He was allowed to plead guilty in the Eastern District as part of a plea agreement in which the government gave up its right to include him in the joint trial in the Northern District of California. O'Hara presumably saw immediate benefits in pleading that outweighed the costs and gamble of going to trial in the Northern District of California. We see no reason why O'Hara must be given the option of the plea in the Eastern District to be taken or not after hindsight discloses the outcome of the California trial. Such a view would deprive the government of its part of the bargain by requiring it to institute a new trial solely for O'Hara or let him escape the charges.

An additional difficulty arises in circumstances similar to the instant case, where the pleading defendant is a witness for the government in the trial of the coconspirators. The possibility of a withdrawal of a guilty plea after such a trial gives such witnesses an incentive to search for subtle ways to undermine the government's case. Indeed, Judge Legge's decision may have been influenced by the insubstantiality of O'Hara's testimony.

We do note that our holding is limited to the facts of the present case. O'Hara made a conscious decision to be separated from the proceedings that resulted in a decision favorable to other defendants. Nothing in Judge Legge's conclusory decision on sufficiency grounds created substantial equities in O'Hara's favor. We do not address whether withdrawal of a plea may be denied in the face of favorable decisions of law rendered in unrelated cases. Nor do we hold that an acquittal of related defendants can never constitute a reason sufficient to satisfy the requirement of Rule 32(d). Such a verdict might, for example, reveal a defendant's misunderstanding as to the nature of a conspiracy or the legal implications of his or her conduct. As Rule 32 states, the decision to allow a withdrawal of a plea is committed to the discretion of the district judge who "may permit" such a withdrawal.

When O'Hara's motion to withdraw his plea was heard in the district court, O'Hara's counsel emphasized the preclusion claim and did not expressly mention the "fair and just reason" language of Rule 32(d). However, Judge Korman stated:

> He insisted that that is what he wanted to do. I don't see any injustice here, not after all we went through. He could have been sitting there in that courtroom and he would have been acquitted. He decided he wanted to plead guilty to avoid all of that. You can't take it back. That is not to me a reason for withdrawing a plea.

That ruling clearly indicates that Judge Korman considered the fairness and justice of O'Hara's seeking to capitalize upon the acquittal in the California proceedings.

Affirmed.