**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 12 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CLIFFORD DIONE ARRINGTON,

      Defendant - Appellant.

Nos. 01-1076 and 01-1435
(D.C. No. 98-CR-433-WM)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **KELLY**, Circuit Judge.

On February 5, 2001, Clifford Dione Arrington ("the defendant") was convicted by a jury of one count of conspiracy to distribute cocaine or crack cocaine in violation of 21 U.S.C. § 846 and eleven counts of distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii), and 18 U.S.C. § 2.[1]

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1] At trial, the defendant represented himself, pro se. In this connection, the district court appointed Neil MacFarlane to act as advisory or stand-by counsel for the defendant during the trial. Under the Criminal Justice Act, 18 U.S.C. § 3006A, this court thereafter appointed MacFarlane to represent the defendant on appeal.

On February 20, 2001, the defendant, pro se, filed a premature notice of appeal. (No. 01-1076.) On September 10, 2001, the defendant was sentenced to imprisonment for 188 months on each count, all to be served concurrently, to be followed by five years of supervised release. On that same day, the defendant, pro se, filed a second notice of appeal. (No. 01-1435.) On October 11, 2001, we ordered that the two appeals be consolidated "for purposes of briefing, record and submission." On November 1, 2001, counsel for the defendant received a letter from this court advising him that the docketing statement in No. 01-1076 had not been timely filed. Counsel thereafter, on November 9, 2001, moved to dismiss No. 01-1076, on the condition that a dismissal of No. 01-1076 would in no way effect the No. 01-1435 proceeding. That motion was reserved for consideration, and determination, by the panel to which the cases were ultimately assigned. That motion is now granted, and No. 01-1076 is dismissed as premature. There remains for consideration No. 01-1435.

An indictment charging the defendant and others with various drug violations was filed on November 18, 1998. On July 21, 1999, the defendant filed a motion to suppress the use at trial of the evidence obtained from certain wiretaps. The district court, after hearing, granted that motion, the district court holding that "normal investigative procedures would have yielded the information obtained [by means of the wiretaps]." The government appealed that order to this court. We affirmed the judgment of the district court on June 16, 2000. *U.S. v. Arrington,* No. 99-1565, 2000 WL 775576 (10th

Cir. June 16, 2000).

The trial of this case began on January 29, 2001, and concluded on February 5, 2001. The government's evidence established, *inter alia,* 11 controlled purchases of crack cocaine from the defendant by a government informant named Jerrymiah Hodge. The case agent, FBI Special Agent Todd Wilcox ("Agent Wilcox"), testified that before and after each controlled purchase Hodge was strip searched; that Hodge's conversations with Arrington were recorded on a listening device concealed on Hodge's body; that most transactions were video-taped; and that the money given Hodge to make his purchases of crack cocaine from the defendant was photocopied.

In his opening brief, counsel for the defendant raises two issues: (1) the district court erred in holding that the affidavit in support of an application for a warrant to search the defendant's residence and automobile was sufficient to show "probable cause"; and (2), the evidence to support the defendant's conviction for conspiracy to manufacture, distribute or possess with an intent to distribute cocaine or crack cocaine was legally insufficient.

By a subsequently filed supplemental opening brief, counsel raises two additional issues: (1) at sentencing, the district court erred in concluding that the defendant had distributed in excess of 500 grams of crack cocaine; and (2), as a sub-issue to the foregoing, that the defendant was entrapped into the August 6, 1998, transaction with Hodge, which was the basis for Count 7 in the superceding indictment, and, accordingly,

for sentencing purposes, the amount of crack cocaine involved in that particular transaction, namely 28.0493 grams, should have been deducted from the total drug quantity.

## 1. Search Warrant

On November 18, 1998, the same date as the grand jury returned the original indictment, the government filed applications for warrants to search the defendant's residence and his 1975 Cadillac automobile. The applications were supported by identical affidavits from Agent Wilcox, in which reference was made, *inter alia,* to the evidence obtained through the wiretaps, as well as to other evidence deemed incriminating by the affiant. The applications were granted and search warrants issued. In the ensuing search of the defendant's Cadillac, a driver's license in the name of "ElBenzo Howard" and cash in the amount of $3,100.00 were found under the floorboard of the car, and a digital scale suitable for weighing drugs and a cellular telephone were found in the defendant's apartment.

It would appear that prior to trial the defendant did not challenge the use at trial of the items recovered in either search. It would also appear that during trial, when the district court inquired about whether there was "probable cause" for the warrants in light of the fact that the evidence obtained as a result of the wiretaps had been suppressed, the defendant did object to introduction of the items recovered in the search of his residence and auto. In any event, the district court, after hearing, held that the items found in the

search of the defendant's residence and car were admissible, holding that even though the statements in the affidavits concerning the matters obtained in the wiretap be excised, "probable cause" still existed and that there was a connection between the controlled purchases by the informant from the defendant and the latter's residence and car. On appeal, the defendant argues that without the allegations in the affidavits relating to evidence obtained by the wiretaps, the affidavits did not meet the "probable cause" requirement.

The Fourth Amendment to the United States Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

In connection with the foregoing, in *United States v. Cusumano,* 83 F.3d 1247, 1249-50 (10th Cir. 1996), we spoke as follows:

> The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend IV. In determining whether probable cause supported the issuance of a search warrant, we give "great deference" to the decision of the issuing magistrate or judge. We ask only whether the issuing magistrate or judge had a "substantial basis" for finding probable cause:
>
> > The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.

-5-

And the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In our review, we may disregard allegedly tainted material in the affidavit and ask whether sufficient facts remain to establish probable cause. (Citations omitted.)

In this case, the government filed two applications for a search warrant, one in connection with a proposed search of the defendant's apartment, and a second in connection with the defendant's Cadillac. Each application was supported by an affidavit from Agent Wilcox. The affidavits of Agent Wilcox contained detailed results of his investigation of the matter, and were 149 typewritten pages in length. About one-half of each affidavit related to the results obtained in the wiretaps, but the remaining one-half related to other matters developed by Agent Wilcox in his investigation of the matter and not obtained in the wiretaps.

Our study of the affidavits of Agent Wilcox leads us to conclude, as did the district court, that the affidavits in question met the probable cause requirement of the Fourth Amendment. There was a "substantial basis" for a finding of probable cause. Further, although the district court did not find it necessary to reach the question of harmless error, it would seem to us that any possible error in this regard would, under the circumstances, be only harmless error. *United States v. Martinez-Cigarroa*, 44 F.3d 908, 911 (10th Cir. 1995), *cert. denied*, 514 U.S. 1029 (1995). The only warrant-derived evidence admitted at trial was a cellular phone and a digital scale from the defendant's apartment and a driver's license in the name of "ElBenzo Howard" and $3,100.00 in cash from the

defendant's Cadillac. As indicated, Hodge was strip searched before and after each controlled purchase; his conversations with the defendant were recorded on a listening device concealed on Hodge's body; and most of the controlled purchases of crack cocaine by Hodge from the defendant were videotaped!

## 2. Conspiracy

In Count 1 of the superseding indictment, the defendant was charged with conspiring with ten others, who were identified by name (Hodge was not one of those named), and with "others . . . known and unknown that one and more than one of them would manufacture, distribute and possess with intent to distribute quantities of a mixture or substance containing a detectable amount of cocaine hydrochloride, and a mixture and substance containing a detectable amount of cocaine base, also known as 'crack' or 'crack cocaine' . . . in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(A)(ii) & (iii), and intentionally did aid, abet and cause the same. All in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2." As already stated, the jury convicted the defendant on Count 1 charging conspiracy, and, on appeal, counsel argues that the evidence does not support the jury's verdict.

All apparently agree that the relationship between the defendant and Hodge cannot be the basis for a conspiracy charge, or for a conviction on a conspiracy charge. In this regard, in *Montgomery v. United States,* 853 F.2d 83, 85 (2nd Cir. 1988), the Second Circuit held that "[i]n order to be guilty of conspiracy to distribute heroin in violation of

21 U.S.C. § 846, the individual charged must have conspired with someone other than a government agent or an informant." In an unpublished opinion, *United States v. Acosta,* No. 90-6266, 1991 WL 268797, at footnote 1 (10th Cir. Dec. 13, 1991), we said that "[o]ne cannot be guilty of conspiring with an undercover agent," citing *Montgomery,* 853 F.2d at 85*, and *United States v. Rodriquez,* 765 F.2d 1546, 1552 (11th Cir. 1985).

In any event, on appeal, it is the government's position that the evidence shows that the defendant conspired with "others" (but not Hodge) to manufacture, distribute and possess cocaine and crack cocaine. Indeed, at trial the defendant himself testified that he purchased cocaine from several different suppliers and then sold powder cocaine, but not crack cocaine, to Hodge and several other persons for resale. Counsel counters by asserting that the defendant was a "truly independent contractor" and that both in his acquisition of the cocaine and in his reselling of it to others it was only a "buyer-seller relationship," and not a "conspiracy." We do not believe that this is simply a "buyer-seller" case. The defendant was "in the business," so to speak, for a considerable length of time acquiring cocaine powder on a regular basis from regular suppliers, converting the powder cocaine to crack cocaine, and selling it to others, who, in turn, resold it to still others. This is not the case of an isolated sale on a street corner where the government is attempting to charge the buyer who bought an ounce of cocaine for his personal use with conspiracy. *U.S. v. Evans,* 970 F.2d 663 (10th Cir. 1992), *cert. denied*, 507 U.S. 922 (1993), and *U.S. v. Birmingham,* 545 F.2d 706 (10th Cir. 1971).

To prove a conspiracy, it is not necessary to show a written agreement between the alleged conspirators and a conspiracy may be shown by either direct or circumstantial evidence. *U.S. v. Evans,* 970 F.2d at 669. The defendant himself testified at trial that he bought cocaine from several different suppliers and then resold to Hodge, and others, knowing that the purchasers were going to resell the cocaine thus purchased to still others. Accordingly, the defendant was inter-dependent with others in this entire adventure, which was both pervasive and long-standing.

### 3. Sentencing

Counsel asserts that the district court, at sentencing, erred in determining, for sentencing purposes, that the defendant had distributed over 500 grams of crack cocaine. The United States Sentencing Guideline § 2D1.1 assigns a base offense level of 34 to persons distributing at least 150 but less than 500 grams of cocaine base, and an offense level of 36 to one distributing at least 500 grams but less than 1.5 kilograms of cocaine base. There is a 37 month difference in the minimum recommended sentences for those two offense levels. The crack cocaine sold to Hodge on 11 separate occasions totaled 449.9142 grams. The government argues that to that figure another 196 grams should be added, based on Hodge's testimony that, in addition to the 11 controlled purchases, he regularly purchased, unbeknownst to Agent Wilcox, additional amounts, from the defendant, "on the side" for his personal use. In any event, the pre-sentence investigation report indicated that the defendant had distributed in excess of 500 grams, and the district

court, in sentencing the defendant, proceeded on the basis that such established an offense level of 36, and not 34.[2]

In determining that the defendant was involved in the sale of an amount of crack cocaine in excess of 500 grams, the district court noted that "approximately 450 grams" were involved in the 11 controlled purchases of crack cocaine by Hodge from the defendant for purposes of resale. The district court then found that Hodge, in addition to his controlled purchases from the defendant, also purchased 1/4 to ½ grams of crack cocaine "more than once a week over a considerable period of time, which would yield, according to the government's calculation, what they call conservative, at least 196 grams. I agree that at least 51 - they had shown by a preponderance of the evidence that at least 51 grams were involved so as to place the defendant in Level 36."

In *U.S. v. Green,* 175 F.3d 822, 837 (10th Cir.), *cert. denied,* 528 U.S. 852 (1999), we said that we review a district court's calculation of the amount of drugs a defendant should be held accountable for under the guidelines as a finding of fact, which we uphold unless clearly erroneous. We do not regard the district court's finding that the defendant

---

[2]The presentence report recommended that the defendant's offense level be increased by two levels, to 38, for his "Role in the Offense" as provided by U.S.S.G. § 3B1.1(c). At hearing, the district court declined to follow that recommendation. Accordingly, the defendant was sentenced on the basis of an offense level of 36, and a criminal history category of I, carrying a guideline range of imprisonment for 188 to 235 months. Defendant argues that he should have been sentenced on the basis of an offense level of 34, and criminal history of I, carrying a guideline range of 151 to 188 months imprisonment.

was involved in the sale of an amount in excess of 500 grams of crack cocaine as being "clearly erroneous."

In connection with the district court's finding that the appellant was involved in the purchase and sale of an amount of crack cocaine in excess of 500 grams, counsel suggests that the defendant was entrapped into the August 6, 1998, (Count 7) controlled buy. Therefore, his conviction on that count should be set aside and the amount of cocaine involved in that sale (28.0493 grams) should be deducted from the total drug quantity for sentencing purposes. In this regard, the defendant, at trial, did request a jury instruction on entrapment, which request the district court denied. It is true that in the August 6th transaction the defendant expressed some concern over the quality of the crack cocaine involved in that sale, but such is not evidence of any lack of predisposition to sell on his part. Eleven sales is, in itself, strongly suggestive of predisposition!

On May 13, 2002, three days after this case was orally argued with the defendant's appointed counsel appearing and arguing in behalf of the defendant, the defendant filed with this court a "Defendant's pro-se Motion Concerning Omissions or Misstatements in the Pending Appeals Brief." That motion is now granted. However, nothing contained therein convinces us that the defendant's conviction or sentence should be reversed.

Judgement affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

-11-